**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 23 1999**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

MICHAEL O. GORDON,

Defendant-Appellant.

No. 98-3122

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D.C. No. 97-CR-10021)

---

David M. Lind, Assistant United States Attorney, (Jackie N. Williams, United States Attorney, with him on the brief), Wichita, Kansas, for Plaintiff-Appellee.

David H. Moses, of Curfman, Harris, Rose & Smith, L.L.P., Wichita, Kansas, for Defendant-Appellant.

---

Before **PORFILIO**, **McWILLIAMS**, and **BALDOCK**, Circuit Judges.

---

**BALDOCK**, Circuit Judge.

---

On January 11, 1997, police officers found drugs and ammunition during a warrantless search of a motel room in Wichita, Kansas.  Defendant Michael O. Gordon

and Tiffany Myers were subsequently charged in a three-count indictment with possession with intent to distribute crack cocaine and cocaine, and possession of rifle ammunition.

Defendant filed a motion to suppress evidence, arguing that the officers obtained the evidence in violation of the Fourth Amendment to the United States Constitution. The district court denied Defendant's motion to suppress and Defendant's subsequent motion to reconsider. On appeal, Defendant argues that the district court erred by denying the motions. Our jurisdiction arises under 28 U.S.C. § 1291. We affirm.

## I. Background

On January 11, 1997, at approximately 9:00 p.m., the Wichita, Kansas police department recieved an anonymous tip that two individuals, Tiffany Myers and Preston Espinoza, were engaged in drug activity in the Motel 6 on West Kellogg and had drawn a gun on the caller from a black Saturn. Officers Arnaldo Martinez and Bret Benjamin were dispatched in response to the tip.

Officers Martinez and Benjamin arrived at the Motel 6 and located a black Saturn in the motel parking lot. The vehicle was registered to Tiffany Myers. Upon further investigation, the motel clerk confirmed that a Tiffany Myers had rented room 209. Officer Martinez also learned through a check of police records that Preston Espinoza had an outstanding felony arrest warrant. Officer Martinez asked the motel clerk to call room 209 to determine if anyone was present. She did so and a male voice answered.

2

The officers, believing Espinoza was in the room, called for back-up. As the two officers were approaching room 209, they noticed an individual who fit Espinoza's description walking toward the black Saturn. When asked, Espinoza identified himself, and the officers arrested him on the outstanding warrant. After a pat-down search revealed that Espinoza was unarmed, Officer Benjamin escorted him to his police car.

Having found no gun on Espinoza, Officer Martinez became concerned that Myers, the remaining occupant of the room, might be armed. Therefore, Officer Martinez waited for back-up to arrive before approaching room 209. After two additional officers arrived, they approached room 209 with their guns drawn. Martinez knocked on the door and said "police officers." A male voice responded "who?" Martinez repeated "police officers, open the door." Defendant opened the door about six inches. Defendant's hands were in his pocket, so Officer Martinez told him to remove them so he could see them. Defendant removed his hands and turned to his left, making a throwing motion toward the bed. As he did so, Defendant moved away from the door. Because Officer Martinez had placed his hand on the door to keep Defendant from shutting it, the door swung open as Defendant spun around, allowing Officer Martinez to see into the motel room. Officer Martinez observed several other people, a set of scales and sandwich bags. At that point, he noticed one of the individuals in the room, Connie Ramsey, moving toward the bathroom. Concerned that she was attempting to destroy evidence or reaching for a weapon, Officer Martinez entered the room and stopped her.

3

After securing the room and its occupants, the officers obtained a search warrant for room 209. Officers executed the warrant early the next morning and seized cocaine, scales, sandwich bags, ammunition, film, a cellular phone and various documents.

After Defendant was taken to the police station, Detective Beverly Brimer advised Defendant of his Miranda rights using a standard form. Defendant said he wanted to waive his rights and signed the form. When Detective Brimer asked Defendant about the room key found on his person, he said he was only using it so he could get back into the room quickly after he went to the parking lot to talk with someone. He did not tell Detective Brimer that the room key was his or that room 209 was his room. Detective Brimer also asked Defendant how long he had been in the room and he told her three minutes. Defendant explained that he was there to conduct some business with Preston Espinoza. When asked what kind of business, he stated: "Well, that's pretty obvious, isn't it." From this statement, Detective Brimer believed Defendant was referring to the narcotics business.

A few weeks prior to Defendant's arrest, Lieutenant M. Keith Barnes, chief investigator at the Kansas El Dorado Correctional Facility, received from the prison mail room a letter and photographs sent to an inmate by Defendant. Two of the photographs contained large sums of currency. Upon inspection, Barnes determined that the photographs were indicative of drug or gang activity. Therefore, he read the accompanying letter. Concerned that the photographs depicted illegal activity, he copied

4

the letter and photographs and sent the originals to the inmate. Barnes then sent copies to Agent Rick Husselman with the Department of Corrections in Wichita, because the letter indicated that the writer was a parolee. Barnes handled a second letter and set of photographs sent by Defendant to another inmate in the same manner. After Defendant's arrest, Agent Husselman took the letters and photographs to the Wichita police department and was present when Detective Brimer questioned Defendant about them. Detective Brimer advised Defendant that the letters would be used as evidence against him.

Defendant filed a motion to suppress the evidence seized from the motel room and the photocopies of the letters and photographs. On September 12 and 15, 1997, the district court conducted an evidentiary hearing and denied the motion. On October 10, 1997, Defendant filed a motion to reconsider. The district court conducted another evidentiary hearing on October 17 and 27, 1997, and denied the motion to reconsider. Defendant subsequently entered a conditional guilty plea to possession with intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1), and the district court sentenced him to 84-months imprisonment. Defendant reserved the right to appeal the denial of his motion to suppress evidence. See Fed. R. Crim. P. 11(a)(2).

## II. Analysis

When reviewing a district court's denial of a motion to suppress, we consider the totality of the circumstances and view the evidence in a light most favorable to the

5

government.   United States v. Hunnicutt, 135 F.3d 1345, 1348 (10th Cir. 1998).  We accept the district court's factual findings unless those findings are clearly erroneous. United States v. Villa-Chapparo, 115 F.3d 797, 801 (10th Cir. 1997).  The credibility of witnesses, the weight to be given evidence, and the reasonable inferences drawn from the evidence fall within the province of the district court.  Id.  Keeping in mind that the burden is on the defendant to prove that the challenged search was illegal under the Fourth Amendment,  United States v. Ludwig, 10 F.3d 1523, 1526 (10th Cir. 1993), the ultimate determination of reasonableness under the Fourth Amendment is a question of law reviewable de novo.  Hunnicutt, 135 F.3d at 1348.

### A. Reasonable Expectation of Privacy

Initially, we must determine whether Defendant can claim that *his* Fourth Amendment rights were violated when officers entered the motel room in Wichita, Kansas.[1]  To do so, we must decide whether Defendant had an "expectation of privacy in the place searched, and that his expectation is reasonable."  Minnesota v. Carter, 119

---

[1]  We note at the outset that although the Government raised this issue below, the district court did not make specific factual findings regarding Defendant's reasonable expectation of privacy in the motel room.  The trial judge, however, did state after hearing the testimony offered at the Sept. 15, 1997, suppression hearing that "I'll simply rule that you have standing."  After reviewing the record, we find it sufficiently developed to allow appellate review of the district court's decision.  See United States v. Toro-Pelaez, 107 F.3d 819, 824 (10th Cir. 1997) (detailed findings of fact not required as long as the essential basis of the district court's decision is apparent).

S.Ct. 469, 472 (1998).[2]  An expectation of privacy is reasonable if it arises from a source "outside the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society."  Rakas v. Illinois, 439 U.S. 128, 143-44 (1978).  The Fourth Amendment protects people from unreasonable searches of their "persons, houses, papers, and effects."  U.S. Const. amend. IV.  Fourth Amendment protection is "a personal right that must be invoked by an individual." Carter, 119 S.Ct. at 473.  The extent of this protection sometimes depends upon the location of the person claiming the protection.  See id.  Thus, we must determine whether Defendant had a reasonable expectation of privacy in the motel room. The burden is on Defendant to show that he had such an expectation.  See United States v. Conway, 73 F.3d 975, 979 (10th Cir. 1995).

We have recognized that an individual may have a reasonable expectation of privacy in a motel room.  See United States v. Carr, 939 F.2d 1442, 1446 (10th Cir. 1991).  In making this determination, we have traditionally considered whether the individual had lawful ownership or control of the premises searched.  See id.  Of

---

[2] Although the district court, the parties, and many Tenth Circuit opinions, characterize this as a question of "standing," the Supreme Court expressly rejected a standing analysis in Rakas v. Illinois, 439 U.S. 128, 143 (1978).  "In order to determine whether a defendant is able to show the violation of his (and not someone else's) Fourth Amendment rights, the 'definition of those rights is more properly placed within the purview of substantive Fourth Amendment law than within that of standing.'" Minnesota v. Carter, 119 S.Ct. 469, 472 (1998) (quoting Rakas, 439 U.S. at 140).  Although we have applied the appropriate standard in our previous opinions, on many occasions we have incorrectly labeled it as "standing."

7

importance is the status of the defendant as an overnight guest. See Carter, 119 S.Ct. at 473 ("an overnight guest in a home may claim the protection of the Fourth Amendment, but one who is merely present with the consent of the householder may not"). Thus, we have required a defendant to demonstrate that he was the registered occupant of the room or that he was sharing it with the person to whom the room was registered. See Carr, 939 F.2d at 1446; see also Conway, 73 F.3d at 979 (defendant must at least demonstrate that, in the case of a motel room, that he was the invited guest of the renter of the premises).

In a recent opinion, the Supreme Court effectively heightened the burden for a defendant claiming a reasonable expectation of privacy in a dwelling other than his own home, when the defendant's presence in the dwelling is for a commercial or business purpose. See Minnesota v. Carter, 119 S.Ct. 469 (1998). In Carter, the Supreme Court held that two individuals, who were in an apartment leased to another person, had no reasonable expectation of privacy where they were "essentially present for a business transaction and were only in the home a matter of hours." 119 S.Ct. at 473. The two defendants were present in the apartment for the sole purpose of packaging cocaine and were there for 2 1/2 hours when an officer discovered the illegal activity. Id. at 471. The Supreme Court held that the defendants did not have a reasonable expectation of privacy in the apartment, emphasizing the commercial nature of defendants' conduct. The Court explained that an individual's expectation of privacy in commercial premises is "'less than, a similar expectation in an individual's home.'" Id. at 474 (quoting New York v.

8

Burger, 482 U.S. 691, 700 (1987)).  As the Court put it, although the apartment was a dwelling place, for the defendants it was "simply a place to do business."  Id.

In the present case, Defendant claims that because he had a key to the motel room, paid for the room, and men's clothing and toiletries were found in the room, he has proven that he had a reasonable expectation of privacy in the motel room.  We disagree. The motel room was registered, not to Defendant, but to Tiffany Myers at a single occupant rate.  Although Defendant had a room key in his pocket when he was arrested, he never claimed that it was his room key.  In fact, Defendant told Detective Beverly Brimer after his arrest that he had only taken the key from the room so that he could enter the motel room after meeting with someone in the parking lot.  The mere fact that the key was in his possession is not enough to establish a reasonable expectation of privacy in the motel room.  See Conway, 73 F.3d at 979-80 ("mere physical possession or control of property" insufficient to establish reasonable expectation of privacy).  Furthermore, although Defendant testified that he gave Myers the money to pay for the room, he presented no testimony confirming his asserted status as co-occupant.  See id.  In addition, the fact that Defendant gave Myers $30.00 to pay for the room does not establish that he was the occupant of the room or that he was staying there as Myers' guest.  He may have merely owed or loaned Myers some money.

Finally, Defendant argues that because the police found men's clothing and toiletries in the motel room, it demonstrates that he was an occupant of the room.  While

the presence of Defendant's belongings in the motel room would be relevant to our determination of Defendant's reasonable expectation of privacy in the motel room, see Carter, 119 S.Ct. at 473, nothing in the record establishes that these items were Defendant's. Significantly, Defendant did not testify that the items belonged to him, and the clothing and toiletries could have belonged to Preston Espinoza, who was also present in the room on January 11, 1997. The confidential informant's claim that Espinoza and Myers, not Defendant and Myers, were dealing drugs from a room in the Motel 6 further supports the conclusion that the items belonged to Espinoza.

Under our traditional analysis, Defendant has failed to provide sufficient evidence to establish that he had a reasonable expectation of privacy in the motel room. Furthermore, in light of Carter,[3] the evidence is even less persuasive. As in Carter, Defendant was present at the motel for a business purpose, i.e., distributing illegal drugs. Detective Brimer testified that Defendant told her the morning after his arrest that he was at the motel to see Preston Espinoza about "business." Defendant's testimony confirmed that he was at the motel that evening to talk to Preston about business. Detective Brimer also testified that when asked what kind of business, Defendant responded with: "Well, it's pretty obvious, isn't it."

Defendant was only present briefly in the motel room. He told Detective Brimer

---

[3] Importantly, the district court judge did not have the benefit of Carter when he determined that Defendant had "standing" to challenge the search.

that a friend dropped him off at the motel approximately three minutes before Officer Martinez arrived.   Although defense counsel argues that Defendant was present for seven or eight hours before Officer Martinez arrived, Defendant testified that the room had been rented for "seven or eight hours" before Officer Martinez arrived, but did not testify that he was present in the room for that period.  He testified that after he arrived at the motel around 1or 2 p.m., he left the room in a white Cadillac to get "beer and gas" and returned at "about 8 p.m."  Thus, Defendant was present only a short time before Officer Martinez knocked on the motel room door at approximately 9:30 p.m.  At most, he was present in the room for a couple of hours.   Similarly, the defendants in Carter were in the apartment for only 2 ½ hours before officers arrived.

Thus, we are presented with a case very similar to Carter.  Defendant was present in a motel room leased to another person, for a short time, and for the purpose of conducting business.  As in Carter, Defendant's status was more like one "simply permitted on the premises" instead of that of an "overnight guest."  Carter, 119 S.Ct. at 474.  The Supreme Court found no reasonable expectation of privacy in Carter; and likewise, we find none here.  Because we conclude that Defendant had no reasonable expectation of privacy in the motel room, we need not decide whether Officer Martinez' conduct constituted an unconstitutional search.[4]  See Carter, 119 S.Ct. at 474.

---

[4] Although the district court concluded that Defendant could challenge the search, but that Officer Martinez' conduct did not violate the Fourth Amendment, we may affirm
(continued...)

11

## B. Letters to Inmates

The district court refused to suppress the letters intercepted by Lieutenant Barnes at the El Dorado Correctional Facility. Defendant argues this was error. We disagree. In order to challenge the seizure of the letters, Defendant must have a reasonable expectation of privacy in the items seized. See Rakas, 439 U.S. at 143-44. Although letters "are in the general class of effects in which the public at large has a legitimate expectation of privacy," United States v. Jacobsen, 466 U.S. 109, 115 (1984), the Fourth Amendment does not protect items "knowingly exposed to the public." United States v. Miller, 425 U.S. 435, 442 (1976) (internal quotations omitted). Thus, once a letter is sent to someone, "the sender's expectation of privacy ordinarily terminates upon delivery." United States v. King, 55 F.3d 1193, 1196 (6th Cir. 1995). In the case of unprivileged incoming and outgoing prison mail, regulation by prison officials is "essentially an administrative matter in which the courts will not intervene." Wilkerson v. Warden of U.S. Reformatory, El Reno, 465 F.2d 956 (10th Cir. 1972).

In this case, Defendant sent the letters and photographs to an inmate in a correctional facility. As a former inmate of that facility, Defendant was aware that under prison regulations all mail that was not "legal, official or privileged mail may be inspected at any time." Kansas Admin. Regulations 44-12-601(I)(1). Defendant does

---

[4](...continued)
the district court on any ground supported by the record. See Gownan v. U.S. Dept. of Air Force, 148 F.3d 1182, 1189 (10th Cir. 1998).

not claim that these letters were "legal, official or privileged." In addition, the regulations provide that any mail that "is a threat to institutional safety, order or security" or "is being used in furtherance of illegal activities" may be censored. Id. In this case, the treatment of the letters and the photographs depicting Defendant with large amounts of currency, comported with prison regulations. Because Defendant sent the letters to an inmate at a correctional facility, fully aware that prison officials could lawfully and, would likely, inspect the letters, he had no reasonable expectation of privacy in them.

### III. Conclusion

For the reasons stated above, the decision of the district court is AFFIRMED.