**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 3 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

UNITED STATES,

      Plaintiff-Appellee,

v.

RAUL CASTELLON,

      Defendant-Appellant.

Case No. 98-1258

(D.C. No. 92-CR-113)
(District of Colorado)

**ORDER AND JUDGMENT**[*]

Before **BRORBY**, **HOLLOWAY**, and **HENRY**, Circuit Judges.

Raul Castellon appeals his conviction following a jury trial on one count of

conspiracy to possess cocaine with intent to distribute, in violation of 21 U.S.C. §§

841(a)(1), (b)(1)(A), and 846.  He argues the court erred in failing to grant his motion to

suppress evidence.  We affirm.

**I.  BACKGROUND**

On February 11, 1992, acting at the request of the FBI, the Denver police stopped

---

[*]      This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel.  The court generally disfavors the citation of
orders and judgments; nevertheless, an order and judgment may be cited under the terms and
conditions of 10th Cir. R. 36.3.

a car in which Mr. Castellon was riding with Rafael Iribe-Perez. Based on conversations that it had intercepted between Mr. Iribe-Perez and his brother, Martin, the FBI suspected that Martin was collecting money for the head of a drug ring and that the car contained cocaine that he had recently purchased

Denver police officer Gary Salazar testified that he ordered a fellow officer, Ron Neiber, to make the stop. According to Officer Salazar, he also told Officer Neiber to identify the men inside the car and determine whether they were illegal aliens. Officer Salazar added that when the car passed the spot at which he was conducting surveillance, it was traveling at a high rate of speed, "reason enough to [make the] stop." Rec. supp. vol. I at 111.

Because they did not want to immediately compromise the ongoing drug investigation, the law enforcement agents decided in advance to use a "ruse" of one sort or another on the car's occupants. Accordingly, after Rafael Iribe-Perez produced no form of identification other than a Mexican birth certificate and Mr. Castellon produced a green card, the Denver police officers called agents of the Immigration and Naturalization Service (INS) to the scene. The INS agents questioned the two men and informed them that they would be taken to an INS detention center twelve miles from the location of the stop. The agents explained that they needed to take him into custody in order to verify his green card because it looked too new and was of a new series. They also told him that he might be suspected of alien smuggling because he was traveling with an illegal alien.

When Mr. Castellon arrived at the INS detention center, the agents fingerprinted and photographed him. One and one-half hours later, after verifying his identification, the agents released Mr. Castellon.

Meanwhile, the police towed the car to the FBI garage. After obtaining a warrant, law enforcement agents conducted a search and discovered eight kilograms of cocaine in a hidden compartment in the chassis of the car. The agents then decided that, in order to continue their investigation, they would continue the ruse. Thus, before releasing Mr. Castellon, they informed him that the car had been detained not because they suspected that it contained drugs but because it had been driven by an illegal immigrant. As a result, they said, the car could be claimed by the proper owner.

Pursuant to a court authorized wiretap, FBI agents intercepted several telephone calls between Mr. Castellon and Mr. Almeida after Mr. Castellon's release. Records of the calls were introduced at trial to connect Mr. Castellon with the alleged conspiracy.

Mr. Castellon was charged with violations of 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(A) conspiracy to possess with intent to distribute cocaine on February 28, 1992. At trial, he moved to suppress the evidence against him, including evidence found in the searched car and his subsequent phone statements. The district court held a hearing and denied the motion. Mr. Castellon was subsequently found guilty, and sentenced to 50 months imprisonment and five years of supervised release.

## II. DISCUSSION

On appeal, Mr. Castellon argues the district court erred in denying his motion to suppress evidence obtained from the search of the car in which he was riding and his subsequent phone statements. The government responds that Mr. Castellon lacks standing to challenge the search because he was merely a passenger without a property interest in the vehicle. Alternatively, the government argues that the law enforcement officers complied with the Fourth Amendment.

When reviewing a district court's denial of a motion to suppress, we consider the totality of the circumstances and view the evidence in a light most favorable to the government. See United States v. Gordon, 168 F.3d 1222, 1225 (10th Cir. 1999). We accept the district court's factual findings unless those findings are clearly erroneous. Id. The defendant bears the burden of proving that the challenged search was illegal under the Fourth Amendment, but the ultimate determination of reasonableness under the Fourth Amendment is a question of law we review de novo. Id.

We begin with the government's contention that Mr. Castellon lacks standing to challenge the search. Fourth Amendment protection is "a personal right that must be invoked by an individual." Minnesota v. Carter, 119 S.Ct. 469, 473 (1998). We have previously labeled the question of whether an individual is protected by the Fourth Amendment as a "standing" inquiry. See Gordon, 168 F.3d at 1226 n.2. However, as the Supreme Court has noted, "[i]n order to determine whether a defendant is able to show

4

the violation of his (and not someone else's) Fourth Amendment rights, the 'definition of those rights is more properly placed within the purview of substantive Fourth Amendment law than within that of standing.'" Carter, 119 S.Ct. at 472 (quoting Rakas v. Illinois, 439 U.S. 128, 140 (1998)).

We agree with the government that Mr. Castellon does not have sufficient Fourth Amendment interests to challenge the search directly. He must show that he had an "expectation of privacy in the place searched, and that his expectation is reasonable." Carter, 119 S. Ct. at 472. Here, he has not met his "burden of adducing facts at the suppression hearing indicating that his own rights were violated by the challenged search." Erwin, 875 F.2d at 270 (quoting United States v. Skowronski, 827 F.2d 1414, 1418 (10th Cir. 1987)). He claimed neither legitimate ownership nor possession of the car. See id. at 271. A passenger does not have a legitimate expectation of privacy in the chassis of a car. See Rakas, 439 U.S. at 148-49 ("Like the trunk of an automobile, [the glove compartment and area under the seat] are areas in which a passenger qua passenger simply would not normally have a legitimate expectation of privacy."). Thus, Mr. Castellon may not challenge the search itself.

Nevertheless, even as a passenger, Mr. Castellon has a sufficient Fourth Amendment interest (what we previously called standing) to challenge the initial traffic stop and his subsequent detention. "It is beyond dispute that a vehicle's driver may challenge his traffic stop, and we see no reason why a person's Fourth Amendment

5

interests in challenging his own seizure should be diminished merely because he was a passenger, and not the driver, when the stop occurred." United States v. Erwin, 875 F.2d 268, 270 (10th Cir. 1989); see also United States v. Eylicio-Montoya, 70 F.3d 1158, 1164 (10th Cir. 1995) (concluding "that a passenger has standing to challenge a constitutionally improper traffic stop, detention, or arrest on Fourth Amendment grounds even though, when the seizure occurs, she has no possessory or ownership interest in either the vehicle in which she is riding or in its contents").

Accordingly, we must consider whether the evidence obtained was the fruit of an unlawful stop or detention. "Even if defendant lacks standing to challenge the search of the car, if the initial stop was illegal, the seized contraband is subject to exclusion under the 'fruit of the poisonous tree' doctrine." Erwin, 875 F.2d at 269 n.2; see also Eylicio-Montoya, 70 F.3d at 1164 (considering whether evidence was the fruit of a passenger's unlawful arrest). The fruit of the poisonous tree inquiry is not a matter of "but for" causation:

> We need not hold that all evidence is "fruit of the poisonous tree" simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.

Wong Sun v. United States, 371 U.S. 471, 487-88 (1963) (internal quotation marks and citation omitted). However, "if not even the 'but for' test can be met, then clearly the evidence is not a fruit of the prior Fourth Amendment violation." United States v.

6

Shareef, 100 F.3d 1491, 1508 (10th Cir. 1996) (quoting 5 Wayne LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 11.4(a), at 236-37).

Here, we conclude that there is no error in the district court's refusal to suppress evidence under the fruit of the poisonous tree doctrine. In particular, the record supports the district court's conclusion that the initial stop of the vehicle was lawful. Officer Salazar testified that the vehicle was speeding. Moreover, the evidence submitted by the government regarding its investigation of the drug conspiracy established that the law enforcement agents had a reasonable suspicion that the car contained cocaine. Thus, the initial stop of the car comported with the Fourth Amendment.

Further, while we have some question as to whether Mr. Castellon was properly detained after he produced a valid green card, he has not shown that the evidence he seeks to suppress – the contents of the car and his subsequent statements – was the "but for" result of his detention, regardless of whether the detention itself was legal. Both the car evidence and Mr. Castellon's subsequent statements regarding his involvement with the car resulted from the detention of the *car*, not of Mr. Castellon. The police would have obtained the very same evidence whether Mr. Castellon had been detained or whether he had been allowed to immediately walk away.

Although Mr. Castellon argues that the police should have released the car to him, this argument is without merit. The officers were under no obligation to release the car to Mr. Castellon, particularly when it appears from the record that Mr. Castellon did not

7

produce any proof of legal entitlement to the car.  See United States v. Long, 705 F.2d 1259, 1262 (10th Cir. 1983) (law enforcement officers may impound an automobile until the ownership of the vehicle can be ascertained).  Finally, we note that the police subsequently obtained a search warrant to search the car based on probable cause to believe it contained contraband, and Mr. Castellon does not challenge the issuance of that warrant on appeal.  For the above reasons, the evidence is not fruit of the poisonous tree under Wong Sun.

### III.  CONCLUSION

Although we have some concerns about the propriety of Mr. Castellon's detention, Mr. Castellon has failed to establish that law enforcement agents obtained the evidence in question as a result of that detention.  Accordingly, we AFFIRM the district court's denial of Mr. Castellon's motion to suppress.

Entered for the Court,

Robert H. Henry
Circuit Judge

8