**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 13 2003**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

ROBERT LEE VARNEDORE,

    Defendant - Appellant.

No. 03-5014
(D.C. No. 02-CR-52-EA)
(N.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **EBEL**, **HENRY** and **HARTZ**, Circuit Judges.

Robert Lee Varnedore was convicted by a jury of possession of a firearm

and ammunition after former conviction of a felony in violation of 18 U.S.C.

§§ 922(g)(1) and 924(a), and possession of stolen firearms in violation of

18 U.S.C. §§ 922(j) and 924(a)(2). Varnedore was sentenced to two concurrent

terms of 115 months' imprisonment. On appeal, Varnedore claims that (1) the

---

[*] After examining appellant's brief and the appellate record, this panel has
determined unanimously that oral argument would not materially assist the
determination of this appeal. <u>See</u> Fed. R. App. P. 34(a)(2) and 10th Cir. R.
34.1(G). The case is therefore ordered submitted without oral argument. This
Order and Judgment is not binding precedent, except under the doctrines of law of
the case, res judicata, and collateral estoppel. The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be
cited under the terms and conditions of 10th Cir. R. 36.3.

district court abused its discretion when it replaced a juror with an alternate; (2) that the district court committed plain error in admitting into evidence weapons found during two separate searches; and (3) that the district court erred in refusing to grant his motion for a new trial when, after trial, the Government learned that one of its witnesses had a prior conviction more than 10 years old that had not been disclosed to the defense. We conclude that Varnedore's claims are without merit, and we AFFIRM his conviction.

## BACKGROUND

In December 2001, Varnedore went to a car dealership in Tulsa, Oklahoma to trade in a pickup truck and purchase a car. A number of his actions at the dealership caused the staff there to be suspicious of him. He sought to pay cash for the car, had a large sum of cash on his person, and offered to bribe the salesman to complete his purchase quickly. (ROA III at 104–05.) The driver's license Varnedore produced for identification had a picture that did not resemble him, and the signature on the license did not match Varnedore's signature on the dealership's paperwork. (Id. at 107–08.) In addition, he wanted to register the car in another name. (Id. at 108.) Based on this suspicious activity, the dealership notified the Tulsa police.

- 2 -

Two police officers arrived at the dealership to investigate what they thought to be a fraud in progress. (Id. at 120–21.) They inspected the license Varnedore had used and asked if it was his. Varnedore said "yes." (Id. at 122–24.) They then asked if he had any other identification, and after Varnedore said he had none they asked Varnedore for consent to search him. Varnedore consented to the search. Finding no other identification on Varnedore's person, one of the officers asked him where the vehicle was that Varnedore was trading in. (Id. at 134–35.) The officer then went to the pickup truck and looked inside for anything else that might confirm Varnedore's identity. (Id.) While inspecting the interior of the pickup, the officer noticed the butt of a gun under the passenger seat and removed a loaded handgun. (Id. at 135.) The officers then arrested Varnedore. (Id. at 145.)

The day before he was arrested, Varnedore had checked into a Tulsa motel and rented a room for two days. (Id. at 156–58, 163–65.) On December 31, 2001, two days after he was arrested and also after his rental of the motel room had expired, a housekeeper cleaning the room discovered four rifles and a pistol under the mattress. (Id. at 167–68.) The housekeeper notified the police, and they came and took possession of the guns. (Id. at 168.)

In March 2002, a federal grand jury indicted Varnedore on three counts: possession of a firearm and ammunition after former conviction of a felony in

violation of 18 U.S.C. §§ 922(g)(1) and 942(a), possession of stolen firearms in violation of 18 U.S.C. §§ 922(j) and 924(a)(2); and possession of a firearm and ammunition while a fugitive from justice in violation of 18 U.S.C. §§ 922(g)(2) and 924(a)(2). (ROA I, Doc. 1.)

The trial was held in July 2002. On the day the trial was scheduled to begin, a jury, with one alternate juror, was selected and sworn. (ROA III at 20–73.) After the jury was chosen, the court recessed before the trial was to commence. During the recess, one of the jurors informed the court that she could not continue with the trial because she was suffering from serious shoulder pain. (Id. at 76–77.) The court questioned the juror about her pain and was told that the pain was severe. (Id. at 84–85.) The juror said her pain medication did not relieve the pain and only made her head feel "fuzzy" and made it difficult to concentrate. (Id. at 85.) The court then replaced the disabled juror with the alternate pursuant to Fed. R. Crim. P. 24(c). (Id. at 85.)

Varnedore was convicted by the jury of counts one and two of the indictment on July 2, 2002.[1] Shortly after trial, the Government discovered that one of its witnesses, Tom Marrs, had a criminal history that it had failed to reveal

---

[1] Prior to jury selection, the Government filed a motion to proceed to trial on Counts 1 and 2 only, reserving the right to proceed on Count 3 at a later time. (ROA I, Doc. 18.) After trial, the district court granted the Government's motion to dismiss Count 3 without prejudice. (ROA I, Docs. 23, 24.)

to the defense. (ROA I, Doc. 30.)   The Government immediately notified Varnedore of this fact, explaining that it had not learned of the conviction before or during trial because a Government agent failed to correctly formulate a database query that would have revealed Marrs's prior conviction.  (Id. at 2.) Marrs had been convicted in 1991 on federal bank fraud charges and sentenced to ten months in prison.  He was released in February 1992, more than ten years before he testified at Varnedore's trial.  (Id. at 1, 3.)       At trial, Marrs had testified that he worked at the dealership that sold Varnedore the pickup truck. He provided limited testimony with respect to the fact that no gun was present in the truck when Varnedore purchased it.  (ROA III at 184.)  This testimony was cumulative of testimony given by Robbie Mooney, the salesperson at the dealership who actually sold the pickup to Varnedore.  Mooney went on a test drive with Varnedore in the pickup and testified that he did not notice any guns in the pickup at that time.  (Id. at 190–91.)

After receiving the information about Marrs, Varnedore moved for a new trial, arguing that the Government violated Brady v. Maryland, 373 U.S. 83 (1963), by failing to disclose Marrs's criminal history before trial.  The district court denied the motion, reasoning that the evidence of Marrs's prior conviction, if disclosed, would not have changed the outcome of the trial.  (ROA I, Doc. 30, at 2–4.)

Varnedore timely filed a notice of appeal and now challenges the replacement of the disabled juror with the alternate, the admission of the guns into evidence, and the district court's refusal to grant him a new trial. We take jurisdiction pursuant to 28 U.S.C. § 1291 and, finding no merit to Varnedore's challenges, AFFIRM his conviction.

**DISCUSSION**

**I.     Replacement of juror**

We review a district court's decision to replace a juror for abuse of discretion. United States v. McVeigh, 153 F.3d 1166, 1185 (10th Cir. 1998). We will not disturb a trial court's decision under the abuse of discretion standard unless we have a "definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." Moothart v. Bell, 21 F.3d 1499, 1504 (10th Cir. 1994) (citation omitted).

Varnedore argues that instead of replacing the disabled juror with an alternate, the district court should have selected a new jury. However, the Federal Rules of Criminal Procedure expressly provide for the empaneling and use of alternate jurors:

**In General.** The court may empanel no more than 6 jurors, in addition to the regular jury, to sit as alternate jurors. An alternate juror, in the order called,

- 6 -

shall replace a juror who becomes or is found to be unable or disqualified to perform juror duties. Alternate jurors shall (i) be drawn in the same manner, (ii) have the same qualifications, (iii) be subject to the same examination and challenges, and (iv) take the same oath as regular jurors. An alternate juror has the same functions, powers, facilities and privileges as a regular juror.

Fed. R. Crim. P. 24(c)(1).[2]

In the instant case, before the trial began, one juror informed the court that she could not proceed with the trial because of a painful injury and the effects of her pain medication. The district judge carefully questioned the juror to determine the extent of her disability and concluded that she could not fulfill her responsibilities as a juror. Having excused that juror, the trial judge replaced her with the alternate. The district trial did not exceed the bounds of permissible choice in the circumstances, but properly followed the command of Rule 24(c)(1): "An alternate juror . . . shall replace a juror who becomes or is found to be unable or disqualified to perform juror duties." Fed. R. Crim. P. 24(c)(1). The district court placed on the jury the alternate juror selected by both parties at voir dire and the trial proceeded. Because the district court properly followed Rule 24(c)(1) in replacing a juror who was found to be unable to perform her duties, it was not an abuse of discretion for the district court to proceed with the trial instead of picking a new jury.

---

[2] The district court relied upon the 2002 version of Rule 24(c) that was in effect at the time of Varnedore's trial in July 2002. Effective December 1, 2002, Rule 24(c) was amended as part of the general restyling of the Criminal Rules.

## II. Admission of weapon evidence

Varnedore's second challenge is to the admission at trial of the guns found in his pickup truck and in the motel room in which he had been staying. He forthrightly acknowledges that he did not make an objection to this effect at trial. (Aplt. Br. at 8.)

"Generally, the failure to object to the admissibility of evidence is a waiver absent plain error. Therefore, we must determine whether the admission of this evidence constitutes plain error." United States v. Gomez, 67 F.3d 1515, 1524 (10th Cir. 1995) (citing United States v. Jones, 44 F.3d 860, 875 (10th Cir. 1995), and Fed. R. Crim. P. 52(b)). To constitute plain error, the error must be: (1) plain (2) error (3) that affects substantial rights and (4) that seriously affects the fairness, integrity, or public reputation of judicial proceedings. See United States v. Olano, 507 U.S. 725, 732–36 (1993).

Turning first to the handgun seized in the pickup truck at the car dealership, we find that its admission into evidence at trial was not plain error. Any one of three legitimate justifications could conceivably have been offered by the Government for the gun's admission had its admission been challenged. First, although the record is unclear (due to Varnedore's failure to object), Varnedore may actually have consented to the search of his pickup truck at the same time that he consented to a search of his person. (ROA III at 133–35.) Second, the

gun could have been admissible as a search incident to a lawful arrest, as the officers likely would have arrested Varnedore for fraud or attempted fraud and found the gun after routinely searching his pickup truck after the arrest. See United States v. Holt, 264 F.3d 1215, 1225 (10th Cir. 2001). Finally, because Varnedore was attempting to trade in the pickup truck, he may have possessed a diminished expectation of privacy in the truck. We need not choose among these three potential justifications for the search, however, for any one of them suffices to demonstrate that the district court's decision to admit the gun found in Varnedore's truck did not constitute plain error.

We also reject Varnedore's challenge to the admissibility of the guns found in his motel room. Although a motel guest does have a reasonable expectation of privacy in his room, United States v. Gordon, 168 F.3d 1222, 1225–26 (10th Cir. 1999), that expectation or privacy is lost when the rental period for the room expires. United States v. Croft, 429 F.2d 884, 887 (10th Cir. 1970); United States v. Rahme, 813 F.2d 31, 34 (2d Cir. 1987). Here, the motel housekeeper entered Varnedore's room and discovered the guns after the rental period had expired. "Since after the rental period expires a guest has no right of privacy, there can be no invasion thereof." Croft, 429 F.2d at 887.

Moreover, the guns were discovered by the motel's housekeeper, not by a state actor. "Although the Fourth Amendment does not apply to a search or

seizure, even an arbitrary one, effected by a private party on his own initiative, the Amendment protects against such intrusions if the private party acted as an instrument or agent of the Government." Skinner v. Railway Labor Executives' Ass'n, 489 U.S. 602, 614 (1989). Here, there is no allegation, much less any evidence, that the housekeeper was acting as a Government agent or instrument when she entered Varnedore's room and discovered the guns. Accordingly, it was not error, much less plain error, for the district court to admit into evidence the guns discovered in Varnedore's motel room.

## III. Motion for new trial

Finally, Varnedore argues that the Government's failure to disclose until after trial the criminal record of its witness Tom Marrs constituted a violation of Brady v. Maryland, 373 U.S. 83 (1963), and that the district court thus erroneously denied Varnedore's motion for a new trial on that ground. We review de novo the district court's denial of a motion for a new trial based on an alleged Brady violation. United States v. Pearl, 324 F.3d 1210, 1215 (10th Cir. 2003).

"To establish a Brady violation, a defendant must show '1) that the prosecution suppressed evidence; 2) that the evidence was favorable to the accused; and 3) that the evidence was material.'" Id. (quoting Smith v. Sec'y of N.M. Dep't of Corr., 50 F.3d 801, 824 (10th Cir. 1995)). We find that

Varnedore's argument fails on the first and third <u>Brady</u> prongs.  With respect to the first prong, the record does not support a finding that the Government suppressed the evidence of Marrs's criminal history.  Rather, the Government informed the district court that its failure to produce that evidence was the result of an innocent data entry error made during the check of Marrs's criminal history; Varnedore has not even alleged on appeal, much less established, that the Government's explanation is false or that its reason for not turning over the evidence before trial was nefarious.  (ROA I at Doc. 30.)  When the error was discovered, the Government immediately notified defense counsel, who then moved unsuccessfully for a new trial based on the discovery.  (ROA I at Doc. 25.)

Even if the Government had actively suppressed the evidence, however, Varnedore's challenge would still fail under the third prong of <u>Brady</u> because the evidence of Marrs's criminal history was not material.  For the evidence of Marrs's prior conviction to be material, "there must be a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.  A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome."  <u>Scott v. Mullin</u>, 303 F.3d 1222, 1230 (10th Cir. 2002) (internal quotation marks and citations omitted).  Our review of the record leads us to conclude, as did the district court, that there is not a

reasonable probability that disclosure of Marrs's bank fraud conviction would have changed the result of the Varnedore's trial.

First, Marrs's conviction would not likely have been admitted by the district court even if it had been disclosed to defense counsel. Federal Rule of Evidence 609(a)(2) allows the admission of prior convictions to impeach a witness when those convictions, like Marrs's, were for crimes involving dishonesty or false statement. But Rule 609(b) states that evidence of such prior convictions is generally not admissible if more than ten years have elapsed since the conviction or release from confinement of the witness—which is the case here. Marrs was convicted for bank fraud in March 1991, sentenced to 10 months in prison and released on February 6, 1992, more than ten years before Varnedore's trial in July 2002. Rule 609(b) contains a caveat that the court may, despite the ten-year time limit, admit evidence of a prior conviction beyond that limit if the court "determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect." Nothing in the record, however, leads us to believe that the district court would have so concluded.

Even if the district court had admitted the evidence of Marrs's prior conviction, there is not a reasonable probability that the result of the trial would have been different. Marrs was a minor witness who testified that he worked at

the dealership that sold Varnedore the pickup truck and that no gun was present in the truck at the time it was sold to Varnedore. (ROA III at 184.) That testimony was cumulative of testimony given by Robbie Mooney, the salesperson at the dealership who actually sold the pickup to Varnedore. (Id. at 190–91.) Marrs was by no means central to the Government's case; thus, even if his prior conviction had been admitted, and the jury had discounted his testimony based on that conviction, we cannot conclude that there is a reasonable probability that its verdict would have been different. As a result, we reject Varnedore's Brady challenge.

## IV.  Conclusion

For the foregoing reasons, we AFFIRM Varnedore's conviction.

ENTERED FOR THE COURT

David M. Ebel
Circuit Judge