**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 25 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

RAY C. PAYNE,

Defendant - Appellant.

No. 03-3205

(D. Kansas)

(D.C. No. 02-CR-10142-MLB)

**ORDER AND JUDGMENT** *

Before **KELLY** , **ANDERSON** , and **HENRY** , Circuit Judges.

Following the district court's denial of his motion to suppress, Ray C. Payne entered a conditional plea of guilty to being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). As permitted by the terms of his plea agreement, Mr. Payne now appeals the district court's order denying suppression of the gun he dropped while being pursued by police. For the reasons set forth below, we affirm the district court's ruling.

---

*This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

# BACKGROUND

At approximately 10 p.m. on September 24, 2002, Officers Beard and Harty of the Wichita Police Department's gang unit observed Payne as he was stopped at a stop sign in a blue Oldsmobile. The officers testified that they became suspicious because of the way Payne stared at them as they passed his car. They therefore turned their car around intending to check the Oldsmobile's license plate. Meanwhile, Payne had continued driving and, according to the officers' testimony, turned right without signaling. The officers then intended to stop Payne's vehicle, but they were still some distance behind him. As they continued following the Oldsmobile, they saw it turn into the driveway of a house and stop. The house was later determined to belong to Payne's cousin.

The officers also pulled into the driveway and parked directly behind the Oldsmobile. They saw Payne had exited the vehicle and was then approximately five feet away from it, approaching the house. Both officers, who were wearing gang unit attire consisting of black clothing with the word "POLICE" in large white letters on the front and back, got out of their car and yelled at Payne to stop. Payne continued walking toward the house. Following, Officer Beard again yelled stop. Payne turned and looked directly at the officer, then began running towards the house's backyard. While Officer Harty remained on the street, Officer Beard, holding his weapon in the "low ready" position, pursued Payne

into the backyard. During the next six seconds, according to Officer Beard's testimony, the following occurred:

> [Payne]'s running, he's reaching into his waistband as he's going along. Right now I'm still at the low ready position. I'm gettin' ready to come up, keep giving him verbal commands to stop, police. As he's turning, from what I can see is he turns (witness indicating) he's now pulled out a stainless steel colored handgun.
> . . . .
> . . . . It was definitely in his right hand and he had pulled it out as he is kind of caught in the wires [of a clothesline], pulls it out and he starts to come this way towards me. But I had shown the flashlight towards his eyes and I think he just threw it on the ground at that point. Never actually came all the way up or pointed it directly at me; but it was in this kind of a motion (witness indicating) and he just kind of throws it down and takes off again.

Hr'g Tr. at 38-39, R. Vol. II. On cross-examination, Officer Beard repeated:

> Like I said, it's all one motion. As he's running this way, he starts to fall into the clothesline. The clothesline is – like he is trying to duck underneath. I saw he is getting caught, then he is trying to get down underneath here and going like this. The gun comes out like this and then he throws it down.

Id. at 55. According to Officer Beard, Payne never came to a complete stop while discarding the gun. Payne testified, to the contrary, that when he heard Officer Beard order him to stop in the backyard, "I stopped, looked over my shoulder . . . and I turned around and faced him and then threw the firearm down." Id. at 77.

Payne then jumped over the backyard fence and fled. Several hours later, Payne was found hiding in the vicinity and was arrested. Meanwhile, the police recovered a Sterling Arms Mark #2, .380 caliber semiautomatic handgun from the

spot where Officer Beard saw Payne drop the gun. After Payne's prior felony conviction was discovered, he was charged by indictment with violating 18 U.S.C. § 922(g)(1).

Payne sought to suppress the gun as evidence, claiming its recovery resulted from a Fourth Amendment violation. Specifically, Payne contested the police officers' claim that he had failed to use his turn signal and argued that even assuming he had committed a traffic infraction, the police were not justified in pursuing him onto private property or in detaining him in the backyard.

In denying Payne's motion to suppress, the district court concluded that Payne "never submitted to the officers' authority" during the initial backyard pursuit, and held that Payne therefore "was not seized, let alone subjected to a custodial arrest, until he was discovered hiding several hours later." Mem. and Order at 5, R. Vol. I, tab 21. The district court further held that the officers had sufficient justification to initiate a traffic stop, based on their observed turn signal violation, and that their subsequent actions were reasonable under the circumstances as they developed. The court concluded that Payne dropped the gun in the backyard "deliberately . . . in an admitted effort to keep it from being discovered on his person," and thus "retained no reasonable expectation of privacy in the [gun]." Id. at 8. The court held that the gun was thus voluntarily abandoned and properly subject to seizure at the time it was recovered by police.

After entering a conditional guilty plea pursuant to a plea agreement, Payne was sentenced to thirty months' imprisonment, followed by three years of supervised release. He then brought this appeal of the district court's denial of his motion to suppress.

## DISCUSSION

In reviewing the denial of a motion to suppress, "we accept the district court's findings of fact unless they are clearly erroneous." United States v. Flynn, 309 F.3d 736, 738 (10th Cir. 2002). Where a search or seizure has occurred, we review de novo the ultimate question of whether it was reasonable under the Fourth Amendment. Id.

Here, as indicated above, the district court held that the police's seizure of the gun was reasonable because Payne voluntarily abandoned the gun in his cousin's backyard. We consider property to be abandoned, and thus subject to warrantless seizure, when the person discarding the property retains no reasonable expectation of privacy in it. Id. In order for the seizure of the property to be reasonable under the Fourth Amendment, however, the abandonment must have been voluntary. Id. We hold an abandonment involuntary as a matter of law if it occurs "as a consequence of illegal police conduct." Id.; see also United States v. Garzon, 119 F.3d 1446, 1451 (10th Cir. 1997) ("A defendant cannot be deemed . .

-5-

. to have abandoned his or her property merely by refusing to comply with [a police officer's] unlawful order."); United States v. Hernandez, 7 F.3d 944, 947 (10th Cir. 1993) ("[A]n abandonment is not voluntary when it results from a Fourth Amendment violation.").

Payne argues that his abandonment of the gun was involuntary on the basis that it resulted from a prior Fourth Amendment violation – an unreasonable seizure of his person by Officer Beard. As noted above, however, the district court held, and the government continues to argue, that Payne was not seized at the time he dropped the gun. We must therefore resolve the initial question of whether Payne was seized at all before considering whether such a seizure was unreasonable.

Whether a seizure has occurred is an issue of law subject to de novo review. United States v. McKneely, 6 F.3d 1447, 1451 (10th Cir. 1993); see also United States v. Wood, 981 F.2d 536, 538 (D.C. Cir. 1993). Following the Supreme Court's ruling in California v. Hodari D., 499 U.S. 621, 626 (1991), we have held that "[u]ltimately, a seizure requires either the use of physical force by the police officer or submission by the individual to the police officer's assertion of authority." United States v. Harris, 313 F.3d 1228, 1234 (10th Cir. 2002).

Here, Payne's claim that he did submit to Officer Beard's show of authority rests on his factual assertion that he came to a halt in response to Officer Beard's

order and stood facing the officer at the moment he discarded the gun. However, Officer Beard's testimony contradicted this assertion, indicating that Payne discarded the gun while simultaneously disengaging himself from a backyard clothesline and continuing his flight. The district court clearly credited the officer's testimony, finding that Payne discarded his weapon "in the middle of a police chase," Mem. and Order at 8, R. Vol. I, tab 21, having "r[u]n from the officers almost immediately after being confronted" by them, and "never submitted to the officers' authority" until his later arrest, id. at 5. We cannot consider the court's findings clearly erroneous. Thus, we hold that Payne was not seized when he abandoned the gun. [1]

Payne also argues that the police violated the Fourth Amendment by entering his cousin's backyard to pursue him without a search warrant. Payne refers to Welsh v. Wisconsin, 466 U.S. 740 (1984), for the proposition that only exigent circumstances could justify such a warrantless entry. In Welsh, the

---

[1]As indicated above, the district court, having concluded that no seizure occurred, proceeded with a Terry v. Ohio, 392 U.S. 1 (1968), traffic stop analysis, considering whether the "initial stop was proper" and "whether the officers' subsequent actions exceeded the scope of the initial stop." Mem. and Order at 6-7, R. Vol. I, tab 21. Such an analysis is unnecessary here, as without a "seizure," there was no traffic stop, and thus no possibility of a traffic stop-related Fourth Amendment violation. See Hodari D., 499 U.S. at 627 ("Since policemen do not command "Stop!" expecting to be ignored, or give chase hoping to be outrun, it fully suffices [as a deterrent] to apply the [exclusionary rule] to their genuine, successful seizures.").

Supreme Court held that police could not enter a suspect's own home without a warrant based solely on his suspected violation of a noncriminal, civil forfeiture offense.  Id. at 754.

However, Welsh is inapplicable here where the relevant police entry was not into Payne's home but into Payne's cousin's backyard.  Although Payne repeatedly states that "he had [his cousin's] consent" to be on her property, Appellant's Br. at 12, the Supreme Court has explained that "an overnight guest in a home may claim the protection of the Fourth Amendment, but one who is merely present with the consent of the householder may not."  Minnesota v. Carter, 525 U.S. 83, 90 (1998);  see also United States v. Gordon, 168 F.3d 1222, 1225-26 (10th Cir. 1999).  The relevant inquiry is whether the individual has a reasonable expectation of privacy in the premises searched.  Id.  While the district court did not rule on this issue, the record is clear that while Payne was a frequent visitor at his cousin's house, he was not an overnight guest.  Moreover, as the government points out, Payne has failed to demonstrate any other basis on which he might have had any reasonable expectation of privacy in his cousin's backyard that would allow him to challenge the police's entry on Fourth Amendment grounds.

Thus, we conclude that no prior Fourth Amendment violation rendered Payne's abandonment of the gun involuntary.  Nor is there any indication that the

police officers' conduct was otherwise unlawful. We therefore hold that Payne voluntarily abandoned the gun, and the district court properly denied his motion to suppress.

## CONCLUSION

For the foregoing reasons, the district court's order is AFFIRMED.

ENTERED FOR THE COURT

Stephen H. Anderson
Circuit Judge