**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**June 13, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

KENNETH EDWARD SLATER,

Defendant - Appellant.

No. 05-4226

D. Utah

(D.C. No. 2:04-CR-471-DKW)

## ORDER AND JUDGMENT[*]

Before **BRISCOE**, **HARTZ**, Circuit Judges, and **KRIEGER**.[**]

On July 21, 2004, Kenneth Edward Slater was indicted in the United States

District Court for the District of Utah on one count of possession of

methamphetamine with intent to distribute, in violation of 21 U.S.C. 841(a)(1).

He moved to suppress evidence seized during the traffic stop that led to his arrest.

The district court denied the motion, and Mr. Slater was convicted by a jury. He

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**]The Honorable Marcia S. Krieger, United States District Judge, District of Colorado, sitting by designation.

now appeals the denial of his motion to suppress. We have jurisdiction under 28 U.S.C. § 1291 and affirm.

## I. BACKGROUND

On July 12, 2004, Mr. Slater was driving on Interstate 70 near Green River, Utah, when he was pulled over by Utah Highway Patrol Trooper Steve Salas. Trooper Salas had decided to stop Mr. Slater after observing a crack in the passenger side of the windshield of his Ford pickup truck, an unsignaled lane change, and another lane change made after signaling for less than the three seconds required by Utah law.

After the vehicles stopped, Trooper Salas approached Mr. Slater's pickup and requested his license. Mr. Slater responded that although he possessed a license, he did not have it or any other identification with him because he had left his wallet in Iowa. Trooper Salas then asked for the vehicle registration, which Mr. Slater provided. The document showed that the truck was registered neither to Mr. Slater nor to his passenger, but to an Iowa resident named Jesus Olivus. Trooper Salas then asked Mr. Slater to accompany him to his patrol car. Once in the patrol car Trooper Salas started drafting a warning citation. While he was doing so, he asked Mr. Slater a number of questions regarding the ownership of the truck and Mr. Slater's identification and travel plans.

Trooper Salas then contacted the dispatch operator to conduct a check of Mr. Slater's driver's license and the vehicle registration. He continued to engage

Mr. Slater in conversation while awaiting a response from the operator. After the operator provided the results (the operator was unable to locate a valid license for Mr. Slater, but did ascertain that the truck had not been reported stolen), Trooper Salas gave Mr. Slater a copy of the warning citation and returned the vehicle registration.

Trooper Salas then asked Mr. Slater whether he could ask his passenger a few questions while Mr. Slater remained in the patrol car, and Mr. Slater agreed. Afterwards he returned to the patrol car and asked Mr. Slater a few follow-up questions. He then asked whether he could search the truck, and Mr. Slater agreed. Trooper Salas asked twice more whether Mr. Slater was sure he wanted to permit the search, and Mr. Slater assented both times. Trooper Salas also asked the passenger for permission to search, which the passenger granted. During the search Trooper Salas discovered methamphetamine.

Mr. Slater filed a motion to suppress the methamphetamine seized during the search of his truck, as well as the statements he made to Trooper Salas. The district court denied the motion, ruling that Trooper Salas had reasonable suspicion that justified Mr. Slater's detention, and that the subsequent search of the car was consensual. Mr. Slater appeals the denial of his motion to suppress.

## II.   DISCUSSION

The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and

seizures." U.S. Const. amend. IV. A traffic stop is a Fourth Amendment seizure. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979). "A traffic stop is permissible under the Fourth Amendment if the officer has a reasonable articulable suspicion that a traffic violation has occurred or is occurring." *United States v. Alcaraz-Arellano*, 441 F.3d 1252, 1257-58 (10th Cir. 2006) (internal quotation marks and ellipsis omitted). During a valid traffic stop, an officer "may ask to see a driver's license and registration and check to see that they are valid." *United States v. Holt*, 264 F.3d 1215, 1221 (10th Cir. 2001) Also, "[i]t is reasonable for an officer to ask questions about the motorist's travel plans and authority to operate the vehicle." *Alcaraz-Arellano*, 441 F.3d at 1258. Questioning on other topics is permitted as long as that questioning does not prolong the length of the traffic stop. *See id*. If the questioning on additional topics prolongs the stop, the extended detention must be supported by consent or reasonable suspicion of criminal activity. *Id*. at 1259. "When reviewing a district court's denial of a motion to suppress, we consider the totality of the circumstances and view the evidence in a light most favorable to the government." *United States v. Gordon*, 168 F.3d 1222, 1225 (10th Cir. 1999). "We accept the district court's factual findings unless [they] are clearly erroneous. . . . [T]he ultimate determination of reasonableness . . . is a question of law reviewable de novo." *Id*.

Mr. Slater does not challenge the validity of the initial traffic stop. His only challenge to Trooper Salas's questioning is that it unreasonably prolonged

-4-

the length of the stop, and that Trooper Salas did not have reasonable suspicion of criminal activity to justify the prolongation.

The questioning here can be divided into two periods: before and after Trooper Salas returned Mr. Slater's vehicle registration. The first period presents no Fourth Amendment concerns. As Mr. Slater's counsel acknowledged at oral argument, the questions during the first period were routinely permissible under Tenth Circuit precedent regardless of whether they prolonged the length of the traffic stop. *See Alcaraz-Arellano*, 441 F.3d at 1259.

The questioning during the second period requires additional justification. Because the questioning both prolonged the stop and included nonroutine subjects, it was lawful only if supported by reasonable suspicion of criminal activity. *See id.* The district court ruled that Trooper Salas possessed such reasonable suspicion by this point. We agree.

The district court noted the following factors as contributing to reasonable suspicion: Mr. Slater was unable to produce a driver's license or any other form of identification, and a records check was unable to verify his claim that he possessed a valid license; he claimed that the truck was owned by his brother-in-law but did not know his brother-in-law's full name; he had "inconsistent and unusual" travel plans, stating first that he went to Los Angeles on vacation and then that he went to Los Angeles to pick up his passenger; he did not know his passenger's name; he stated that he had gone to visit auto detailing shops in Los

Angeles, but was unable to identify any of the detailing businesses he had visited; the passenger-side airbag of the truck had been altered (apparently an indication of a possible hidden compartment); there was a single clothing bag for both Mr. Slater and his passenger, who were purportedly traveling from California to Iowa; and he was extremely nervous throughout the encounter. Trooper Salas had all the above information before returning Mr. Slater's vehicle registration. That information gave rise to reasonable suspicion. *See United States v. Santos*, 403 F.3d 1120, 1133-34 (10th Cir. 2005). Thus, Trooper Salas's detention of Mr. Slater to ask the last few questions did not violate the Fourth Amendment.

## III.   CONCLUSION

We AFFIRM the ruling and judgment of the district court.

ENTERED FOR THE COURT


Harris L Hartz
Circuit Judge