**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 2, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

OCTAVIO ROJAS-SILOS,

Defendant-Appellant.

No. 05-4234

(D. of Utah)

(D.C. No. 2:04-CR-471-DKW)

---

**ORDER AND JUDGMENT**[*]

---

Before **HENRY**, **TYMKOVICH**, and **HOLMES**, Circuit Judges.[**]

---

Octavio Rojas-Silos was convicted of possessing methamphetamine with intent to distribute in violation of 21 U.S.C. § 841(a)(1). Before trial, Rojas-Silos moved to suppress the evidence of the methamphetamine. The district court denied the motion. On appeal, Rojas-Silos argues that (1) the district court's

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[**] After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed. R. App. P. 34(a); 10th Cir. R. 34.1(G). The cause is therefore ordered submitted without oral argument.

ruling on the suppression motion was erroneous, and (2) there was insufficient evidence to support his conviction.

We AFFIRM.

## I. Background

Utah trooper Steve Salas pulled over a pickup truck in which Rojas-Silos was a passenger after observing several potential traffic violations. He first noticed a crack in the windshield on the truck's passenger side, and then observed the truck's driver change lanes without signaling and change lanes again by signaling for less than three seconds as required by Utah law.

After approaching the vehicle, Salas observed one small clothing bag in the bed of the truck for the two adult male occupants. The vehicle had an Iowa license plate and had been traveling eastbound. When Salas asked the driver, Kenneth Slater, for a driver's license, Slater could not produce one. Slater could not identify the first or last name of his passenger (Rojas-Silos) or the last name of the owner of the vehicle.

Salas took Slater to his patrol car to issue a citation and determine whether Slater was licensed to drive the vehicle. While waiting for a vehicle registration check from police headquarters, Salas asked Slater several questions. During their conversation, Slater's reasons for driving the truck through Utah changed. Slater first claimed he was driving back to Iowa after vacationing in Los Angeles; he next said he had gone to Los Angeles to pick-up his passenger; and he finally

said his father had paid him to visit several car-detailing shops in Los Angeles to learn how those shops operated.

Slater also told Salas he had departed Iowa on Wednesday, arrived in Los Angeles on Friday, and left Los Angeles on Sunday. Slater and Rojas-Silos shared a motel room Friday and Saturday nights. Slater also stated Rojas-Silos was moving to Iowa, even though he did not have any bag, luggage, or clothing with him. The small duffle bag in the truck belonged to Slater.

While Slater was still in the patrol car, Salas returned to the truck to ask Rojas-Silos a few questions. Rojas-Silos stated he was going to Council Bluffs, which was inconsistent with Slater's statement that they were going to Dennison. Rojas-Silos confirmed the two men did not know each other when he said he did not know Slater's name. Finally, Rojas-Silos denied that a new-looking cell phone in the truck's center console belonged to him, even though Slater also denied ownership of the phone.

Trooper Salas obtained permission from both Slater and Rojas-Silos to search the vehicle. Within the truck's tailgate, Salas discovered eight large packages of methamphetamine, totaling 3,400 grams. A small amount of methamphetamine was also found in Slater's pocket. Salas arrested them, and later learned Rojas-Silos had paid for the motel room and spent Saturday in conversations with suspected drug dealers.

Before trial, Slater and Rojas-Silos moved to suppress evidence of the methamphetamine. The district court denied their motions. A jury convicted Slater and Rojas-Silos of the count charged. They were sentenced to 120-months imprisonment and 60-months supervised release. We have already affirmed Slater's conviction on appeal. *United States v. Slater*, 184 F. App'x 717 (10th Cir. 2006). We now consider Rojas-Silos's arguments that (1) the district court should have suppressed the methamphetamine because Rojas-Silos did not validly consent to the search, and (2) there was insufficient evidence to support the jury's conclusion that Rojas-Silos knowingly possessed the methamphetamine. We reject both arguments.

## II. Discussion

*A. Consent*

Whether Rojas-Silos freely and voluntarily consented to the search of the vehicle is a question of fact based on the totality of the circumstances. *United States v. Pena*, 143 F.3d 1363, 1366 (10th Cir. 1998). We review for clear error. *Id.* An individual may consent to a search while being legally detained. "The detention is only one factor to be considered in determining whether consent was voluntarily and freely given based on the totality of the circumstances." *United States v. Contreras*, 506 F.3d 1031, 1037 (10th Cir. 2007).

The district court did not err in concluding Rojas-Silos validly consented to the search. We have already determined trooper Salas had reasonable suspicion

to prolong the initial traffic stop.  *See Slater*, 184 F. App'x at 720 (summarizing facts supporting reasonable suspicion Slater and Rojas-Silos were engaged in transporting drugs).  Rojas-Silos was therefore legally detained.  *See, e.g.*, *United States v. West*, 219 F.3d 1171, 1176 (10th Cir. 2000) (noting an officer can extend a traffic stop if "the officer has reasonable articulable suspicion of other crimes").  The record clearly establishes trooper Salas obtained free and voluntary consent from both Rojas-Silos and Slater to search the vehicle.  Trooper Salas did not brandish his weapon, physically touch either individual, or use an aggressive tone.  In short, Rojas-Silos fails to point to *any* evidence tending to show his consent was not validly given.

We therefore conclude the district court did not err in admitting evidence of the methamphetamine.

### B.  Sufficiency of the Evidence

We will uphold a conviction if "viewing the evidence in the light most favorable to the government and drawing all reasonable inferences therefrom, a reasonable jury could have found the defendant guilty beyond a reasonable doubt."  *United States v. Muessig*, 427 F.3d 856, 861 (10th Cir. 2005).  In this case, the government had to prove Rojas-Silos (1) possessed the controlled substance, (2) with knowledge, and (3) intended to distribute or dispense the controlled substance.  *See United States v. Delgado-Uribe*, 363 F.3d 1077, 1084

(10th Cir. 2004); *United States v. Lauder*, 409 F.3d 1254, 1259 (10th Cir. 2005). Rojas-Silos contests only the second element.[1]

Rojas-Silos's argument that he lacked knowledge of the methamphetamine in the truck is unpersuasive, because there was more than sufficient evidence for the jury to discount his credibility and believe he had knowledge of the drugs. The record establishes the following: (1) Rojas-Silos had conversations with suspected drug dealers in Los Angeles; (2) Rojas-Silos paid for the motel room he and Slater shared in Los Angeles; (3) Salas testified drug organizations often provide a cell phone to a person who is hauling narcotics; (4) Rojas-Silos and Slater both denied ties to the cell phone in the truck's center console; (5) Rojas-Silos was traveling across the country with another man whose name he did not know; (6) Rojas-Silos and Slater gave inconsistent stories about the purpose of their trip; and (7) Rojas-Silos and Slater named different cities as the destination of their trip.

We conclude this evidence, viewed in the light most favorable to the jury's verdict, leads to a plausible inference Rojas-Silos had knowledge of the drugs in

---

[1] To the extent Rojas-Silos also challenges whether he "possessed" the methamphetamine, we conclude the jury could have so found under the theory of constructive possession. *See, e.g.*, *Lauder*, 409 F.3d at 1259 (holding "a conviction for constructive possession is properly sustained where the evidence supports at least a plausible inference that the defendant had knowledge of and access to the contraband" (internal quotation marks omitted)).

the truck's tailgate—i.e., Rojas-Silos knowingly possessed the methamphetamine.

The jury was not required to believe Rojas-Silos's alternative version of events.[2]

### III. Conclusion

For the reasons set forth above, we AFFIRM.

Entered for the Court,

Timothy M. Tymkovich
Circuit Judge

---

[2] As the prosecutor pointed out, Rojas-Silos's explanation for his trip to Los Angeles strains credulity. In closing argument, the prosecutor stated, "Remember that Mr. Silos's story was that he saved up money from roofing in Iowa to take this vacation to California. You will recall that the only thing he did in California was spend a total of $70 at a Super 8 motel room, to spend the night with a guy that he does not know, and went to a flea market and didn't buy anything, and there was nothing found in his truck other than the clothes on his back, and then he spent the day with Mr. Slater, who he claims to not know, and claims to not speak English so he can't even communicate with this guy and that is his vacation. Does that story make sense?" R., Vol. 4, Doc. #96, at 105.