# IN THE SUPREME COURT OF IOWA

No. 07–0691

Filed January 30, 2009

**STATE OF IOWA,**

    Appellee,

vs.

**BRANDON MONTRESE BROOKS,**

    Appellant.

---

Appeal from the Iowa District Court for Scott County, Nancy S. Tabor (suppression ruling) and J. Hobart Darbyshire (trial and sentencing), Judges.

Defendant appeals criminal conviction alleging that evidence obtained after a warrantless entry of a motel room should have been suppressed. **AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Jason B. Shaw, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Jean C. Pettinger, Assistant Attorney General, Michael J. Walton, County Attorney, Kelly G. Cunningham and Robert E. Weinberg, Assistant County Attorneys, for appellee.

**APPEL, Justice.**

Brandon Brooks appeals his convictions for drug-related offenses. He argues that the district court improperly failed to suppress evidence obtained after law enforcement officers conducted a warrantless entry into a motel room. For the reasons expressed below, we affirm the ruling of the district court.

### I. Factual and Procedural Background.

On March 18, 2006, the manager of the Motel 6 in Davenport, Iowa contacted Scott County Sheriff's Deputy Gina Lieferman. The manager requested that Lieferman investigate a complaint from a motel guest that another guest was selling drugs. According to the manager, the complaint was that an African-American male had approached the guest and asked him if he wanted to "buy some stuff."

Lieferman arrived at the Motel 6, which is L-shaped with room doors on the outside facing the parking lot. After speaking to the manager, Lieferman learned that the room in question, number 136, was rented to a female by the name of Easter Kelly and had been paid for in cash on a day-to-day basis.

Deputy Lieferman called Special Agent Curtis Carter to assist her at the scene. They set up surveillance in room 134, two doors from room 136. Eventually, a van and car pulled into the parking lot. An African-American male got out of the van and entered room 136. A female got out of the car, entered room 136 briefly, and then left. After the female's departure, Deputy Lieferman observed individuals enter room 136 and leave shortly thereafter.

At this point, Deputy Lieferman, who was dressed in civilian clothes, decided to conduct a "knock and talk." She asked Agent Carter to stand at the door of room 134 to observe. When Lieferman knocked

on the door to room 136, a male voice asked, "Who is it?" Lieferman responded, "Me."

About thirty seconds later, Brooks, an African-American male, opened the door, which swung inside the motel room, and put his head and shoulders outside the door. When Brooks opened the door, Deputy Lieferman immediately detected the odor of raw cannabis. She could also smell a fragrance that she described as a "masking" smell.

At this point, Deputy Lieferman told Brooks, "I heard you have the hook up," phraseology that Lieferman testified was commonly used by drug dealers. After Brooks twice denied knowing what she meant, Lieferman showed him her badge and identified herself as a law enforcement officer. Lieferman then asked whether Brooks would talk with her and he responded negatively. When Lieferman stated that she knew Brooks had marijuana in the room, the defendant replied, "No you don't, I'm not burning it."

After this remark, Deputy Lieferman decided to arrest the defendant, put her foot in the door, and grabbed for Brooks' wrist, which was on the outside door knob. Brooks pulled back and attempted to get inside the room. Deputy Lieferman then pushed open the door and took two steps inside as she continued to struggle with Brooks. When she entered the room, she observed a large quantity of marijuana, two digital scales, and plastic baggies. Deputy Lieferman placed Brooks under arrest and called an on-duty sheriff's deputy to transport Brooks to the county jail.

Lieferman next called the county attorney and discussed the situation. She obtained permission to seek a search warrant. Lieferman then exited the room and waited in her vehicle in the parking lot,

observing the area until she was informed that the search warrant had been obtained.

Thereafter, Lieferman entered the room again and conducted a full search. As a result of the search, the police seized a green box cutter, multiple grams of cannabis, two digital scales, packaging materials, two cell phones, and mail addressed to Easter Kelly.

Prior to trial, Brooks filed several motions in limine to suppress evidence. Brooks claimed that the initial search was conducted without probable cause and without consent. The State resisted, claiming that the initial entry into the motel room and Brooks' arrest were based on exigent circumstances.

At the hearing on the motion to suppress, the State presented testimony from Lieferman regarding the facts and circumstances leading to Brooks' arrest, her observation of marijuana in the course of making the arrest, and the subsequent search of the motel room after a warrant had been secured. With regard to the motel room, Lieferman testified that room 136 was not rented in Brooks' name and that paying for motel rooms on a day-to-day basis in cash was a common practice of individuals engaged in the sale of controlled substances. The deputy further testified to the course of her surveillance and her belief that controlled substances were being sold from the room. The defendant did not put on evidence at the hearing.

After the close of evidence, the State argued that after Lieferman smelled raw cannabis and the defendant told her that she could not smell the cannabis because he was not burning it, probable cause existed to search the room given the exigent circumstances. The State argued, in the alternative, that Lieferman certainly had probable cause to make the arrest.

The defendant countered that there were no exigent circumstances to support Lieferman's warrantless entry into the motel room. According to the defense, once Lieferman smelled the cannabis and obtained the statement from the defendant, the officer should have simply left and obtained a search warrant.

The district court denied the motion to suppress. The district court declared that it was a "close call" as to whether exigent circumstances existed to allow a warrantless search. The district court, however, noted that there was no evidence regarding the defendant's reasonable expectation of privacy within the motel room. The room was not rented in Brooks' name, the defendant had not offered any evidence as to his relationship with Easter Kelly, there was no evidence that he was an overnight guest, and there was no evidence that he was more than a mere "social" or "commercial" guest in someone else's motel room. According to the district court, the only evidence presented at the hearing indicated that Brooks was in the room for a relatively short period of time. As a result, the district court found that the defendant did not have an expectation of privacy in the motel room and the motion to suppress was denied.

At trial, the State offered evidence found as a result of the execution of the search warrant in its case in chief. After the State rested, Brooks took the stand in his own defense. The defendant testified that he lived at the Motel 6 at the time of his arrest. He asserted that Kelly was his girlfriend and that the room was in her name because he did not have identification. Brooks testified that prior to coming to the Motel 6, he stayed at the Exel Inn, but moved to the Motel 6 because it was cheaper. Before that he lived at his cousin's house. He testified that he left his cousin's house because he and his girlfriend did not have

privacy and went to the motel to do "adult type of things." Brooks further testified that he had a business breeding pit bull puppies and maintained a website associated with the business. Brooks stated that while he was living at the Motel 6, he left his dogs in his cousin's basement.

Brooks was convicted of possession with intent to deliver, possession of marijuana, and failure to affix a drug-tax stamp. Brooks appealed, asserting that the district court erred in not granting the motion to suppress.

## II. Issue of Preservation.

At the outset, Brooks contends that the State waived the issue of whether he had a legitimate expectation of privacy in the motel room. Citing *Steagald v. United States*, 451 U.S. 204, 101 S. Ct. 1642, 68 L. Ed. 2d 38 (1981), Brooks maintains that the State had the initial burden of showing that he lacked a privacy interest. By failing to raise the issue at the suppression hearing, Brooks claims that the State waived the matter.

Brooks further claims that he has been prejudiced by the State's failure to raise the issue of his reasonable expectation of privacy. The defendant asserts that if the State had raised the issue in a timely fashion, he would have responded by offering evidence at the suppression hearing. Because the State did not raise the issue, Brooks claims he did not need to make an evidentiary showing regarding his expectation of privacy.

The State disagrees. The State distinguishes *Steagald*, noting that in that case the trial court did not enter a ruling on the privacy issue. The State further contends that in *Steagald*, the government not only did not raise the issue, but in fact took the position in the trial court that the

premise being searched was the defendant's residence. The State contends that under our cases where an issue has been tacitly considered and ruled upon by the district court, error has been preserved. *See State v. Yaw*, 398 N.W.2d 803, 805 (Iowa 1987).

Our review of the record indicates that neither party explicitly raised the privacy issue, either in the written filings or at the suppression hearing. Nonetheless, after hearing the evidence, the district court squarely ruled on the issue, finding that Brooks failed to show an expectation of privacy in the motel room.

We agree with the State that *Steagald* is not controlling. In *Steagald*, the government acquiesced in the determination that the premises searched was the defendant's home and further argued that as a result, the defendant was in constructive possession of cocaine found in a suitcase in the closet of the residence. *Steagald,* 451 U.S. at 209, 101 S. Ct. at 1646, 68 L. Ed. 2d at 44. Having relied upon the assertion that the residence was the defendant's home to establish constructive possession, the Supreme Court refused to allow the government to reverse course and claim that the defendant lacked an expectation of privacy in the home for the first time on appeal. *Id.* Here, the government did not make any affirmative assertions in the district court that are inconsistent with its position on appeal. Nor did the State acquiesce to a factual finding that the defendant had a reasonable expectation of privacy in the motel room. We, therefore, conclude that *Steagald* is not controlling in this case.

We find the case of *Combs v. United States*, 408 U.S. 224, 92 S. Ct. 2284, 33 L. Ed. 2d 308 (1972), more pertinent. In *Combs*, the defendant was charged with receiving, possessing, and concealing cases of tax-paid whiskey known by him to be stolen from an interstate shipment. *Id.* at

225, 92 S. Ct. at 2285, 33 L. Ed. 2d at 310.  The whiskey was stored in a shed on a farm owned by the defendant's father.  *Id.* at 226, 92 S. Ct. at 2285, 33 L. Ed. 2d at 310.  A search warrant was issued, leading to the discovery of the whiskey.  *Id.*  In the district court, the defendant moved to suppress the evidence on the ground that there was no probable cause to support the search warrant.  *Id.*  The district court denied relief on this basis.  *Id.*  On appeal, however, the Court of Appeals for the Sixth Circuit denied relief on the ground that the petition asserted no possessory or proprietary interest in the searched premises.  *United States v. Combs,* 446 F.2d 515, 516 (6th Cir. 1971).

The United States Supreme Court reversed.  *Combs,* 408 U.S. at 227–28, 92 S. Ct. at 2286, 33 L. Ed. 2d at 311.  In a per curiam opinion, the Supreme Court noted that the record before the district court was "virtually barren of the facts" necessary to determine whether the defendant had a reasonable expectation of privacy in the shed where the whiskey was discovered.  *Id.* at 227, 92 S. Ct. at 2286, 33 L. Ed. 2d at 311.  The Supreme Court reasoned that the defendant's failure to present evidence of his privacy interest "may well be explained by the related failure of the Government to make any challenge in the District Court to petitioner's standing to raise his Fourth Amendment claim."  *Id.*  The Supreme Court thus remanded the case to the district court to allow the defendant to offer such evidence and the district court to rule on the issue.  *Id.* at 228, 92 S. Ct. at 2286, 33 L. Ed. 2d at 311.

We conclude that *Combs* is closer to the fact scenario presented in this case than *Steagald.*  In this case, the government did not make contradictory affirmative assertions in the district court as in *Steagald,* but remained silent, as in *Combs.  See United States v. Hansen,* 652 F.2d 1374, 1382 (10th Cir. 1981); 6 Wayne R. LaFave, *Search and Seizure*

§ 11.7(e), at 466–68 (4th ed. 2004) (determining that *Combs* applies where government simply remained silent or neglected to raise standing in lower courts; *Steagald* approach applies where government made affirmative assertion of facts below that would confer standing or did not alert a reviewing court to the issue in a timely fashion). As such, we conclude that the State has not waived its ability to challenge Brooks' reasonable expectation of privacy in the motel room.

We further conclude that remand to the district court for additional fact finding is unnecessary. Following *Combs*, other courts have remanded cases for further proceedings where the record below is inadequate to determine whether the defendant in fact had a reasonable expectation of privacy in the searched premises. *Moody v. People*, 159 P.3d 611, 616–17 (Colo. 2007); *State v. Ramires*, 152 S.W.3d 385, 401–02 (Mo. Ct. App. 2004).

The record presented here, however, does not necessitate remand. Under Iowa law, an appellate court reviewing the validity of a search may consider not only evidence admitted at the suppression hearing, but also evidence admitted at trial. *State v. Orozco*, 573 N.W.2d 22, 24 (Iowa 1997). As a result, while Brooks may have been surprised by the district court's reliance on his failure to present evidence at the suppression hearing showing his privacy interest in the motel room, the defendant had an opportunity to cure such shortcomings in the record at trial. Further, the record in this case demonstrates that Brooks, in fact, took advantage of the opportunity to offer evidence at trial on the privacy issue. *State v. Carter*, 904 P.2d 290, 292–93 (Wash. 1995) (holding where defendant testified fully at trial regarding privacy issues there was no need for remand under *Combs*).

Finally, we note that on appeal, Brooks has not asked for a remand to offer further evidence, but instead stands on the record developed in the trial court. The State, moreover, does not challenge consideration of the evidence offered at trial and affirmatively suggests that we may consider it on appeal. Remand is thus unnecessary and we give the parties what they ask for, namely, a de novo review of the validity of the search based upon the entire record developed in the district court.

### III. Standard of Review.

Because the motion to suppress was based on a deprivation of the defendant's constitutional right against unlawful searches, this court's review is de novo. *State v. Kreps*, 650 N.W.2d 636, 640 (Iowa 2002). In conducting our de novo review, "we make an independent evaluation [based on] the totality of the circumstances as shown by the entire record." *State v. Breuer*, 577 N.W.2d 41, 44 (Iowa 1998). Each case must be evaluated in light of its unique circumstances. *State v. Legg*, 633 N.W.2d 763, 767 (Iowa 2001).

### IV. Discussion.

**A. Introduction.** The Fourth Amendment to the United States Constitution provides "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. . . ." U.S. Const. amend. IV.[1] In deciding the constitutionality of a search, we undertake a two-step approach. First, the defendant must show that he or she has a legitimate expectation of privacy in the area searched. *State v. Halliburton*, 539

---

[1]Although the defendant has made a parallel claim under Article I, section 8 of the Iowa Constitution, the defendant has not asserted that the state constitutional provision should be interpreted differently than the Fourth Amendment. As a result, for prudential reasons, we assume for the purposes of this case that the Iowa Constitution should be interpreted in the same fashion as its federal counterpart. *State v. Wilkes*, 756 N.W.2d 838, 842 n.1 (Iowa 2008).

N.W.2d 339, 342 (Iowa 1995); *see also United States v. Salvucci*, 448 U.S. 83, 95, 100 S. Ct. 2547, 2554–55, 65 L. Ed. 2d 619, 630 (1980) (holding that the exclusionary rule applies only to a defendant whose own Fourth Amendment rights have been violated). "Second, if the defendant had a legitimate expectation of privacy, we must then decide whether the State unreasonably invaded the protected interest." *Halliburton*, 539 N.W.2d at 342. A warrantless search is unreasonable unless it comes within a recognized exception such as consent, exigent circumstances, or plain view. *State v. Eubanks*, 355 N.W.2d 57, 58–59 (Iowa 1984).

**B. Reasonable Expectation of Privacy.** The Fourth Amendment unquestionably establishes an expectation of privacy in the home. *Payton v. New York*, 445 U.S. 573, 585, 100 S. Ct. 1371, 1379, 63 L. Ed. 2d 639, 650 (1980). The case law extends this protection to hotel or motel rooms. *Stoner v. California*, 376 U.S. 483, 486, 84 S. Ct. 889, 891, 11 L. Ed. 2d 856, 859 (1964); *United States v. Rambo*, 789 F.2d 1289, 1296 (8th Cir. 1986). The case law further establishes that a social guest in a home, and by logical extension in a motel room, has a legitimate expectation of privacy in, at least some areas, of the home or motel room of another. *Minnesota v. Carter*, 525 U.S. 83, 90, 119 S. Ct. 469, 473, 142 L. Ed. 2d 373, 380 (1998); *Minnesota v. Olson*, 495 U.S. 91, 96, 110 S. Ct. 1684, 1688, 109 L. Ed. 2d 85, 93 (1990) (holding overnight houseguest had reasonable expectation of privacy in hostess' home). A mere visitor, however, who is not an overnight guest usually lacks an expectation of privacy when present in the motel room of another. *United States v. Sturgis*, 238 F.3d 956, 958 (8th Cir. 2001).

The mere fact that a premise may be characterized as a residence or a motel room does not, by itself, establish that a particular person has a reasonable expectation of privacy in the premises. For example, the

use of a hotel or motel room as a center for drug transactions and not as a residence does not give rise to legitimate expectations of privacy within the ambit of the Fourth Amendment. A defendant does not have a reasonable expectation of privacy when the motel or hotel room is nothing more than "a convenient processing station" for the packaging and distribution of drugs. *Carter*, 525 U.S. at 102, 119 S. Ct. at 479, 142 L. Ed. 2d at 388 (Kennedy, J., concurring); *United States v. Gordon*, 168 F.3d 1222, 1226–27 (10th Cir. 1999); *State v. Ortiz*, 618 N.W.2d 556, 561 (Iowa 2000).

A defendant challenging a search and seizure occurring in the motel room of a third person must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable. *Olson*, 495 U.S. at 95–96, 110 S. Ct. at 1687, 109 L. Ed. 2d at 92. A bald assertion that one has been staying in a hotel, without further proof, is generally insufficient; as is the defendant's mere presence in the motel room at the time of the search. *United States v. Armenta*, 69 F.3d 304, 308 (9th Cir. 1995); *United States v. Carr*, 939 F.2d 1442, 1445–46 (10th Cir. 1991). In determining whether a defendant has a reasonable expectation of privacy in a motel room, the presence of the defendant's belongings is a relevant factor. *Gordon*, 168 F.3d at 1227; *United States v. Grandstaff*, 813 F.2d 1353, 1357 (9th Cir. 1987).

In this case we must decide, based upon the unique record developed, whether Brooks was using the room at the Motel 6 as an overnight guest, thereby giving rise to an expectation of privacy, or whether he was using the room for the purpose of selling illegal drugs, and thus had no expectation of privacy. At trial, Brooks testified that he was staying overnight in the room as a guest of his girlfriend, in whose

name the room was registered. The room was registered in his girlfriend's name because Brooks purportedly lacked proper identification. He further testified that although he had been living recently at his cousin's home, he and his girlfriend decided to rent a motel room in order to allow them to engage in "adult type of things." He testified that the couple had been staying at the Exel Inn until a few days before his arrest, but had moved to the Motel 6 because it was less expensive. Brooks further testified that he left his pit bulls, the breeding of which were a source of livelihood for him, at his cousin's home.

Upon our de novo review of the record, we conclude that Brooks did not have a legitimate expectation of privacy in the motel room. Aside from his own self-serving statements, Brooks was unable to offer corroborating evidence to support his claim that he was doing anything at the Motel 6 other than selling illegal narcotics. His claim that he moved from one motel to another in order to save money is belied by the fact that he had over two thousand dollars in his possession at the time of his arrest. While there was no evidence in the record that the motel room contained clothing or toiletries belonging to Brooks, there was evidence that the room contained a considerable quantity of drugs, a supply of baggies, and two sets of scales for the weighing of drugs. While Brooks was apparently shirtless when he answered the door, the evidence showed that a gust of warm air exited the room when the door was opened, suggesting that the lack of shirt was for comfort rather than indicia of long-term habitation.

Further, the record developed at trial demonstrates that Brooks was an incredible witness. He claimed, for instance, that the thirteen baggies of marijuana that were found in the groin area of his jeans were for his personal use. The defendant had no explanation for the unusual

storage technique. He further claimed that the two scales found in the motel room were used by him because he liked to precisely measure his own marijuana, which he put in "blunts" for consumption. According to Brooks, the baggies in the motel room were needed because he liked to prepare for himself substantial individual quantities of marijuana in advance.

From the totality of the evidence, we find that Brooks has not shown, by a preponderance of evidence, that he was an overnight guest at the Motel 6. We reject his self-serving testimony. We conclude that Brooks was using the Motel 6 for illicit commercial purposes, namely, selling illegal drugs. The motel room was nothing more than "a convenient processing station" for the packaging and distribution of drugs. *Carter*, 525 U.S. at 102, 119 S. Ct. at 479, 142 L. Ed. 2d at 388 (Kennedy, J., concurring). Brooks thus had only a fleeting and insubstantial connection to the motel room—he was "one simply permitted on the premises." *Id.* at 91, 119 S. Ct. at 474, 142 L. Ed. 2d at 381; *accord Ortiz*, 618 N.W.2d at 561.

In light of our findings, Brooks had no reasonable expectation of privacy in the Motel 6 room. As a result, the district court properly denied the motion to suppress.

**C. Exigent Circumstances.** Aside from the question of whether Brooks had a reasonable expectation of privacy in the motel room, there is a substantial question as to whether a warrantless search of the premises may be based upon exigent circumstances where the exigent circumstances were caused by police conduct. Similar cases have yielded different results. *Compare United States v. Cephas*, 254 F.3d 488, 494–95 (4th Cir. 2001) (holding exigent circumstances were present to support warrantless search where officers, acting on tip regarding the

sale of drugs to minors, knocked on apartment door, smelled marijuana, viewed young girl inside, and made a warrantless entry to avoid the destruction of evidence), *with United States v. Coles*, 437 F.3d 361, 366 (3d Cir. 2006) (holding exigent circumstances exception to warrant requirement not met where police created exigency by knocking and announcing their presence), *and United States v. Vega*, 221 F.3d 789, 798–800 (5th Cir. 2000) (finding police created exigency when they abandoned secure surveillance position without justification and approached residence).

Further, there may also be an issue regarding whether exigent circumstances may be found where the underlying crime is not a felony or is relatively minor. *See Welsh v. Wisconsin*, 466 U.S. 740, 752, 104 S. Ct. 2091, 2099, 80 L. Ed. 2d 732, 744 (1984); *State v. Hughes*, 607 N.W.2d 621, 629 (Wis. 2000). In light of our resolution of the issue of Brooks' reasonable expectation of privacy, we express no opinion on these questions.

### V. Conclusion.

For the above reasons, the decision of the district court denying the motion to suppress is affirmed.

**AFFIRMED.**