ZAGER, Justice
(dissenting).
I respectfully dissent. Not only do I think the district court failed to fully address the public protection purpose of the statute, it also failed to fully and adequately address the specific facts regarding A. J.M. herself. The district court focused, unnecessarily in my opinion, on the alleged failure of the state training school to offer appropriate sex offender treatment for girls and on the possible consequences of where A. J.M. might be able to live.
Although I find the majority’s interpretation of Iowa Code section 692A.103(3) (2011) reasonable, I disagree that we must remand this case because the record does not allow us to properly review the district court’s exercise of discretion. We must keep in mind we review the record de novo to determine whether the district court abused its discretion. See In re C.W.R., 518 N.W.2d 780, 783 (Iowa 1994). We typically remand cases in which the factual record is insufficiently developed for resolution on appeal. See, e.g., State v. Hoeck, 843 N.W.2d 67, 71-72 (Iowa 2014) (explaining the need for remand in light of insufficient factual development and remanding case to the district court). In contrast, when vested with de novo review authority and confronted with a complete record, we have resolved the issue before us without remanding, even when the case required us to consider a district court’s interpretation of a statute. See, e.g., In re Estate of Bockwoldt, 814 N.W.2d 215, 228-29 (Iowa 2012) (concluding a district court did not *609 abuse its discretion when interpreting a statute and awarding attorney fees, and finding upon de novo review attorney’s request for fees complied with the applicable probate rule); see also State v. Brooks, 760 N.W.2d 197, 203-04 (Iowa 2009) (concluding in an appeal challenging the validity of a search that remand was unnecessary when the record was complete). On remand of this case, the district court will not accept new testimony or evidence. Thus, the record the district court examines upon remand will be the same as the record now before this court. Therefore, it is not necessary to remand this case. Rather, in applying the standard articulated by the majority to the facts of this case, then considering the record as a whole, and in our de novo review, I would conclude the district court abused its discretion in not requiring A.J.M. to register as a sex offender.
In our de novo review, we need to focus on what the record shows with regard to A.J.M. and her need to register as a sex offender. In doing so, we must keep a couple of things in mind. First, as the majority recognizes, the Iowa sex offender law presumes that all offenders, including juveniles, are required to register. See In re S.M.M., 558 N.W.2d 405, 407 (Iowa 1997). Second, and equally important, the burden is on A.J.M. to establish she is entitled to a waiver from the registration requirement. See id. at 406. It is clear on this record A.J.M. has failed to overcome this presumption or to meet her burden to establish she is entitled to a waiver of the registration requirement.
The district court in its order stated that it was “aware that the recidivism rate for children is extremely low with less than 97% reoffending if properly treated.” While the record discloses the source of this statistic, it certainly does not apply to A.J.M. In his report dated May 24, 2012, Dr. David Barche, AJ.M.’s treating psychologist, stated she continues to be at “high risk for re-offending and her progress remains to be slow.” At that time, A.J.M. was continuing to have “a serious problem with controlling her sexual urges” and was “having a hard time with understanding as to why she should not engage in sexual activity with others against their will.”
A week before A.J.M. turned eighteen (July 20, 2012), she was asked if she thought she was ready to leave, and if she did leave, whether she would be able to stop sexually offending. A.J.M. responded “that she did not believe she could and she was not ready.” Staff believed at this time A.J.M. “need[ed] to be placed on the sex offender registry.”
In the case review dated August 8, 2012, it is noted that A.J.M. does not follow through with assignments by completing her sex offending worksheets honestly. It notes that A.J.M. struggles with this, “as she does not want to follow through with assignments given to her by the adults in the program or anyone in a position of authority.” A.J.M. “does not like to have feedback from some of the staff working with her; she would rather avoid [the assignments] or make up excuses about why she does not follow through.” Overall, A.J.M. did not complete the sex offender treatment assignments provided to her by Dr. Barche and the Arnold treatment team.
In his psychological evaluation updated August 31, 2012, Dr. Barche noted that A. J.M. “presented with a consistent lack of compliance, dishonesty, and numerous attempts of making herself look like she is being victimized by being placed in a residential treatment facility.” When confronted with her lack of honesty, the evaluation continues, A.J.M. “is quick to blame others ... for her actions.” Dr. Barche *610 notes that in her present sex offender assignment work A.J.M. “continues stating that if given a chance she would offend again, and that this time she would be smarter about making sure that her victims would not talk.” A.J.M. was “asked to complete two different sets of curriculum designed for individuals struggling with control of sexual impulses and empathy.” However, AJ.M.’s “involvement” in those activities was “superficial and full of numerous maneuvers which purpose was to avoid addressing her issues.”
Based on psychological testing done near that same time, her diagnostic impressions included “AXIS I V61.21 Sexual Abuse of a Child — perpetrator” and “AXIS II 801.7 Antisocial Personality Disorder.” Some of Dr. Barche’s recommendations at that time were as follows:
Based on the current presentation, and the fact that [A.J.M.] continues to remain at high risk of reoffending it is recommended for [A.J.M.] to be placed on the Sexual Offender Registry prior to being released to the community. It is also critical that whenever [A.J.M.] will be released back to the community in addition to the registration on the Sexual Offender Registry she will be also asked to complete sexual offender treatment program on the outpatient basis.
Despite [our] numerous efforts, [A.J.M.] continues to reject help offered to her. Treatment team at the Iowa Juvenile Home remains committed to helping [A.J.M.].
Finally, in the discharge summary dated August 29, 2012, the same pattern of blaming others emerges for A.J.M.: A.J.M. “continues to avoid being honest about herself and her problems”; she believes she can manipulate others to get what she wants; she fails to follow through with treatment protocols provided to her; she “continues to admit that she has urges and fantasies about other females in the program.” The last paragraph of her discharge summary discloses a particularly grim picture of A.J.M., her future likelihood to reoffend, and her need to be placed on the sexual offender registry:
To meet [A.J.M.] or to sit and talk with her, one would have no idea how deviant her thought processes are. She has learned very well what she should do or say in any given situation and can be quite pleasant and charming. It is this facade that also makes her very dangerous to society. Dr. Barche and the Arnold Cottage Treatment Team are recommending that [A.J.M.] be placed on the Sex Offender Registry due to the lack of effort in her program and lack of remorse for her actions. We would further recommend continued court supervision and continuation in community-based sex offender programming.
The record in this case is replete with additional facts and progress notes from staff not included here. What the record does demonstrate is that while there may not have been a formal sex offender treatment program geared particularly towards young females, the psychologist and staff worked closely with A.J.M. and developed several sex offender treatment programs specifically designed to meet her needs. All efforts to help A.J.M failed, not because of the lack of programming or dedication by school staff and the psychologist, but because of the total lack of effort expended by A.J.M. to recognize her serious sexual issues and work towards resolving them. Clearly, with this well documented record, and even applying the standard now required by the majority, A.J.M. was not a serious candidate to be waived from the requirements of register *611 ing as a sex offender. The district court abused its discretion in waiving the registration requirement, as its decision cannot be supported by any substantial evidence in this record. I would reverse the decision of the district court and remand to the district court for entry of an order requiring that A.J.M. register as a sexual offender.
WATERMAN, J., joins this dissent.