# IN THE COURT OF APPEALS OF IOWA

No. 16-1711
Filed August 2, 2017

**MARK ALLEN SMITH,**
 Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
 Respondent-Appellee.
_____

 Appeal from the Iowa District Court for Scott County, Nancy S. Tabor, Judge.


 Appeal from the denial of an application for postconviction relief. **AFFIRMED.**



 Les M. Blair III of Blair & Fitzsimmons, P.C., Dubuque, for appellant.

 Thomas J. Miller, Attorney General, and Zachary C. Miller, Assistant Attorney General, for appellee State.



 Considered by Vogel, P.J., and Doyle and McDonald, JJ. Tabor, J., takes no part.

**MCDONALD, Judge.**

Mark Smith was convicted of murder in the first degree and sentenced to life in prison without the possibility of parole. At the time of the offense, Smith was eighteen-years-old. Smith filed an application for postconviction relief. In his application, Smith claimed imposition of a mandatory sentence of life in prison without the possibility of parole on an eighteen-year-old constitutes cruel and unusual punishment and violates his right to the equal protection of the laws. He requested he be made parole-eligible. On the State's motion, the district court summarily dismissed Smith's application for postconviction relief. Smith filed this timely appeal.

"Our review in postconviction relief proceedings is for correction of errors at law." *Manning v. State*, 654 N.W.2d 555, 558–59 (Iowa 2002) (citing *DeVoss v. State*, 648 N.W.2d 56, 60 (Iowa 2002)). However, "[t]his court reviews constitutional questions de novo." *State v. Bruegger*, 773 N.W.2d 862, 869 (Iowa 2009) (citing *State v. Brooks*, 760 N.W.2d 197, 204 (Iowa 2009)). This court's interpretation of federal and state constitutional prohibitions against cruel and unusual punishment is generally the same. *Id.* at 882 ("Our past cases have generally assumed that the standards for assessing whether a sentence amounts to cruel and unusual punishment under the Iowa Constitution are identical to the Federal Constitution." (citing *State v. Musser*, 721 N.W.2d 734, 749 (Iowa 2006))).

In recent years, the supreme court has created a separate sentencing scheme for juvenile offenders. *See State v. Roby*, __ N.W.2d ___, ___, 2017 WL 2610616, at *6 (Iowa 2017); *State v. Sweet*, 879 N.W.2d 811, 839 (Iowa 2016);

*State v. Louisell*, 865 N.W.2d 590, 603 (Iowa 2015); *State v. Seats*, 865 N.W.2d 545, 555–58 (Iowa 2015); *State v. Lyle*, 854 N.W.2d 378, 400–04 (Iowa 2014); *State v. Null*, 836 N.W.2d 41, 74–75 (Iowa 2013); *State v. Pearson*, 836 N.W.2d 88, 95–98 (Iowa 2013); *State v. Ragland*, 836 N.W.2d 107, 121–22 (Iowa 2013). The supreme court has concluded this separate sentencing scheme is required by the constitutional prohibition on cruel and unusual punishment embodied in article I, section 17 of the Iowa Constitution. The factual and legal justifications for the juvenile sentencing scheme are succinctly summarized in *State v. Sweet*, 879 N.W.2d at 830-31 (identifying the critical fourteen points drawn from the federal case law and the three critical principles distilled from the Iowa case law). The primary justifications for the supreme court's juvenile sentencing scheme, and the justifications most relevant here, are medical literature tending to show the brain continues to develop until the age of twenty-five and medical and social science literature tending to show juveniles think and act differently than adults. *See Null*, 836 N.W.2d at 55 (stating the rationale is based on (1) "new" scientific evidence showing "the human brain continues to mature into the early twenties;" and (2) a finding that young people generally "lack the ability to properly assess risks and engage in adult-style self-control"). The supreme court has used this literature to support the argument "juveniles are constitutionally different than adults for purposes of sentencing." *Sweet*, 879 N.W.2d at 830.

Smith argues the constitutional protections set forth in the above-cited cases should be applied to young adult offenders and that he should be eligible for parole. Specifically, in *Sweet*, the supreme court held "a sentence of life without the possibility of parole for a juvenile offender violates article I, section 17

of the Iowa Constitution." 879 N.W.2d at 839. While Smith acknowledges that *Sweet* applies only to juvenile offenders and that he was not a juvenile at the time of the offense, he contends the rationale underlying the case applies with equal force to him.

Within the existing legal framework, Smith's argument is compelling. Indeed, Justice Waterman presaged this argument in his dissenting opinion in *Lyle*:

> By holding Lyle's seven-year mandatory minimum sentence for his violent felony is cruel and unusual punishment and unconstitutional under article I, section 17 of the Iowa Constitution, rather than under the Eighth Amendment, the majority evades review by the United States Supreme Court. As Justice Zager observes, no other appellate court in the country has gone this far. Our court stands alone in taking away the power of our elected legislators to require even a seven-year mandatory sentence for a violent felony committed by a seventeen-year-old.
>
> Will the majority stop here? Under the majority's reasoning, if the teen brain is still evolving, what about nineteen-year olds? If the brain is still maturing into the mid-20s, why not prohibit mandatory minimum sentences for any offender under age 26? As judges, we do not have a monopoly on wisdom. Our legislators raise teenagers too. Courts traditionally give broad deference to legislative sentencing policy judgments. Why not defer today?

854 N.W.2d at 405 (Waterman, J., dissenting).

Although Smith's argument for the extension of the supreme court's juvenile sentencing scheme to young adult offenders is logical, the argument does not entitle him to any relief. The supreme court has made clear that its juvenile sentencing decisions have "no application to sentencing laws affecting adult offenders." *Id.* at 403. "[T]he line between being a juvenile and an adult was drawn for cruel and unusual punishment purposes at eighteen years of age." *Seats*, 865 N.W.2d at 556–57. In addition, this court has rejected the same

argument on several occasions. *See, e.g., Thomas v. State*, No. 16-0008, 2017 WL 2665104, at *2 (Iowa Ct. App. June 21, 2017); *Schultz v. State*, No. 16-0626, 2017 WL 1400874, at *1 (Iowa Ct. App. Apr. 19, 2017); *Kimpton v. State*, No. 15-2061, 2017 WL 108303, at *3 (Iowa Ct. App. Jan. 11, 2017); *State v. Davis*, No. 15-0015, 2015 WL 7075820, at *1-2 (Iowa Ct. App. Nov. 12, 2015) (collecting cases); *State v. Vance*, No. 15-0070, 2015 WL 4936328, at *2 (Iowa Ct. App. Aug. 19, 2015) (collecting cases); *State v. Clayton*, No. 13-1771, 2014 WL 5862075, at *6 (Iowa Ct. App. Nov. 13, 2014). We see no reason to deviate from these prior decisions.

Smith also argues the failure to apply the supreme court's juvenile sentencing scheme to young adult offenders violates his right to equal protection of the laws under the Fourteenth Amendment to the Federal Constitution and article I, section 6 of the Iowa Constitution. *See Nguyen v. State*, 878 N.W.2d 744, 757 (Iowa 2016). To establish an entitlement to relief, Smith must establish he is similarly situated to a juvenile offender. *See State v. Kout*, 854 N.W.2d 706, 708 (Iowa Ct. App. 2014) ("A demonstration that people are similarly situated is a threshold test; failure to make this showing requires no further consideration of the alleged equal protection violation." (citing *Varnum v. Brien*, 763 N.W.2d 862, 882 (Iowa 2009))). Like juveniles, Smith argues, young adults have not completed their mental and emotional development. Young adults are thus similarly limited for constitutional purposes in their inability to assess risk and exercise self-control. *See Null*, 836 N.W.2d at 55 (noting the portion of the brain "central to 'executive functions,' such as reasoning, abstract thinking,

planning, the anticipation of consequences, and impulse control" continues to develop into a person's early twenties).

As with his prior argument, Smith's argument is compelling but unavailing. Juveniles and young adults are not similarly situated for the purposes of sentencing within this constitutional scheme. The supreme court has explicitly stated "[juveniles] are constitutionally different from adults for purposes of sentencing." *Lyle*, 854 N.W.2d at 395 (quoting *Miller v. Alabama*, 567 U.S. 460, 471 (2012)); *see Sweet*, 879 N.W.2d at 831 ("The qualities that distinguish juveniles from adults do not disappear when an individual turns eighteen, but society has generally drawn the line at eighteen for the purposes of distinguishing juveniles from adults."). The constitutional distinction is based on the long-accepted legal distinction between juveniles and adults. For example, persons eighteen years and older are also afforded more rights than juveniles, including: the right to serve as a fiduciary; marry absent parental and judicial consent; vote; sit on a jury; get a tattoo; or use tobacco products. *Null*, 836 N.W.2d at 53.

Whatever the merits of the distinction, the supreme court has made and justified the distinction. *See Lyle*, 854 N.W.2d at 403 ("Lines are drawn in our law by necessity and are incorporated into the jurisprudence we have developed to usher the Iowa Constitution through time."). Ours is not to question why. *State v. Beck*, 854 N.W.2d 56, 64 (Iowa Ct. App. 2014) ("We are not at liberty to overrule controlling supreme court precedent."). We thus decline the invitation to extend the supreme court's juvenile sentencing scheme to young adult offenders. *See Vance*, 2015 WL 4936328, at *3 (rejecting argument that equal protection

required extension of the supreme court's juvenile sentencing cases to young adult offenders); *Spencer v. Philipp*, No. 13-1887, 2014 WL 4230223, at *2 (Iowa Ct. App. Aug. 27, 2014) ("As a general rule, the task of materially altering substantive or procedural rights is best left to the General Assembly or the Supreme Court of Iowa.").

Smith was not entitled to postconviction relief. The district court did not err in summarily dismissing his application for postconviction relief. We affirm the judgment of the district court.

**AFFIRMED.**