# IN THE COURT OF APPEALS OF IOWA

No. 17-0351
Filed February 7, 2018

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**JACOB JAMES McINTIRE,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Boone County, Steven J. Oeth, Judge.

Defendant appeals his conviction for possession of a controlled substance (methamphetamine) with intent to deliver. **AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Stephan J. Japuntich, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Benjamin M. Parrott, Assistant Attorney General, for appellee.

Considered by Vogel, P.J., Bower, J., and Blane, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2018).

**BOWER, Judge.**

Jacob McIntire appeals his conviction for possession of a controlled substance (methamphetamine) with intent to deliver. We find the tenant of the apartment, where McIntire was a casual houseguest, voluntarily consented to a search of the apartment, where McIntire had possession of baggies of methamphetamine in plain view. We conclude the district court properly denied McIntire's motion to suppress. We affirm his conviction for possession of a controlled substance (methamphetamine) with intent to deliver.

## I.     Background Facts & Proceedings

Ron Dickerson was on probation in Boone County. On September 21, 2016, at about 2:15 p.m., Dickerson's probation officer, Steve Naeve,[1] made a visit to Dickerson's apartment in Ogden because Dickerson was not doing very well on probation. Due to probation office policies, Naeve was accompanied by Officer Mike Frazier of the Ogden Police Department.[2] Naeve went to the front door and knocked, while Officer Frazier went to the back door. Naeve testified Dickerson indicated he could enter the apartment.

Inside the apartment, Naeve saw two females playing darts. One of the women had a firearm on her hip. Naeve then saw McIntire sitting on a couch with two bags containing a crystalline substance on his lap. Naeve, who was unarmed, stated he felt the "situation was pretty volatile" and he had safety

---

[1]   In addition to his job as a probation officer, Naeve also has a part-time jobs as an officer with the Boone Police Department and a deputy with the Boone County Sheriff's Department. On this day, he was engaged in his job as a probation officer.

[2]   Naeve testified office policy required there should be at least two people for each home visit. If another probation officer was not available for a visit, probation officers requested law enforcement assistance. In this instance, there was not a probation officer available to accompany Naeve, so he asked an on-duty Ogden police officer to assist him.

concerns, so he let Officer Frazier into the apartment. Officer Frazier arrested McIntire and seized the two baggies, which were found to contain a large quantity of methamphetamine. McIntire had $1842 in cash on him. Drug paraphernalia was also found in the apartment.

McIntire was charged with possession of a controlled substance (methamphetamine) with intent to deliver and possession of methamphetamine. McIntire filed a motion to suppress. At the suppression hearing, McIntire testified he had known Dickerson for about a year and had been to his apartment in Ogden before. McIntire lived in Des Moines. McIntire stated he had been in the apartment for about an hour on September 21, 2016, when Naeve came in. He stated he planned to be there about one to three hours. He stated his girlfriend was going to pick him up after her children got out of school at about 3:00 or 3:30 p.m. He also stated he could not say for sure he would not have stayed overnight. McIntire testified he had a blue bag containing cans of spray paint, some decals, and high-gloss finish in the apartment. He stated he had these supplies in order to start a mailbox-painting project that day.

At the suppression hearing, Dickerson testified he lived alone in the apartment. Dickerson stated he opened the door when Naeve knocked and Naeve just walked in. The State presented the transcript of a telephone call Dickerson made from jail in which he told a friend the parole officer knocked on the door, "I opened the back door and that's when he walked through the back door." Naeve testified:

> Q. What occurred once you made contact with Mr. Dickerson? A. Just he saw me and I said hi. Said I was here to make a visit, asked if I could come in. And he proceeded to open

the door and kind of step back and give me indication, yes, I could come in.

On further questioning, Naeve testified Dickerson responded verbally to acknowledge he could enter the apartment but Naeve did not recall Dickerson's exact words.

The district court denied the motion to suppress. From the bench, the court found McIntire did not have an expectation of privacy in Dickerson's apartment and Dickerson had consented to the search. McIntire filed a motion to amend and enlarge. The court filed a written ruling, stating, "McIntire had no expectation of privacy in the apartment. He was there for a matter of hours. Even if the court is incorrect on the standing issue, the court concludes that Dickerson consented to Naeve's entry into the home." The court found Dickerson's testimony was not credible.

The case proceeded to trial. A jury found McIntire guilty of possession of a controlled substance (methamphetamine) with intent to deliver, in violation of Iowa Code section 124.401(1)(c)(6) (2016), as a second or subsequent offense. He was sentenced to a term of imprisonment not to exceed thirty years. McIntire now appeals, claiming the district court should have granted his motion to suppress.

## II.     Standard of Review

On constitutional issues, our review is de novo. *State v. Pettijohn*, 899 N.W.2d 1, 12 (Iowa 2017). "In conducting our de novo review, we independently evaluate the totality of the circumstances as shown by the entire record." *State v. White*, 887 N.W.2d 172, 175 (Iowa 2016). We give deference to the district

court's factual findings due to its ability to evaluate the credibility of the witnesses, but we are not bound by the court's findings. *State v. Tyler*, 830 N.W.2d 288, 291 (Iowa 2013).

## III.     Consent to Search

Leaving aside the issue of whether McIntire had a legitimate expectation of privacy in Dickerson's apartment,[3] we turn to the issue of whether there was consent to the search. In general, a warrantless search is not constitutional, unless it comes within certain specified exceptions. *State v. Brooks*, 760 N.W.2d 197, 204 (Iowa 2009). One of the exceptions is consent. *Id.* McIntire claims Dickerson did not consent to Naeve's entry into the apartment.

The district court, which had observed the testimony of Dickerson and Naeve during the suppression hearing, found:

> The court acknowledges that there was a factual dispute in the testimony of Steve Naeve and Ronnie Dickerson. Naeve stated that Dickerson consented to his entry into the apartment. Dickerson disputed that assertion and said that Naeve just walked in. The court accepts Steve Naeve's testimony on this dispute. Naeve is a long-time probation officer. He testified in a straight-forward fashion, was subject to intensive cross-examination and admitted facts favorable to Defendant. Dickerson is a convicted felon. He is in prison. His testimony was not credible.

Thus, the court specifically found Dickerson was not a credible witness. "We give deference to the district court's fact findings due to its opportunity to assess the credibility of the witnesses, but we are not bound by those findings." *State v. Storm*, 898 N.W.2d 140, 144 (Iowa 2017). We find Dickerson consented to Naeve's entry into his apartment for the reasons set forth by the district court.

---

3   In determining whether a search violates a person's constitutional rights, we generally first consider whether the person has "a legitimate expectation of privacy in the area searched." *State v. Brooks*, 888 N.W.2d 406, 410 (Iowa 2016).

McIntire also claims, even if Dickerson consented, his consent was not voluntary. "It is well established that a warrantless search, with voluntary consent, is valid under the fourth amendment." *State v. Garcia*, 461 N.W.2d 460, 462 (Iowa 1990). We have stated:

> Consent is considered to be voluntary when it is given without duress or coercion, either express or implied. This test balances the competing interests of legitimate and effective police practices against our society's deep fundamental belief that the criminal law cannot be used unfairly. Thus, the concept of voluntariness which emerges as the test for consent represents a fair accommodation of these interests and values.

*State v. Leaton*, 836 N.W.2d 673, 677 (Iowa Ct. App. 2013) (quoting *State v. Lowe*, 812 N.W.2d 554, 572 (Iowa 2012) (citations omitted)). Whether consent is voluntary is "a question of fact based upon the totality of the relevant circumstances." *State v. Reinier*, 628 N.W.2d 460, 465 (Iowa 2001). It is the State's burden to show consent is voluntary by a preponderance of the evidence. *Id.*

McIntire claims Dickerson's consent was not voluntary because Dickerson signed a probation agreement in which he agreed to submit to a search of his residence without the requirement of a search warrant, if reasonable suspicion existed. A "search provision contained in [a] parole agreement does not represent a voluntary grant of consent within our constitutional meaning." *State v. Baldon*, 829 N.W.2d 785, 803 (Iowa 2013). In this case, Naeve did not mention the probation agreement when he sought to enter Dickerson's apartment. Furthermore, Dickerson testified at the hearing on the motion to suppress he was not positive he had signed a probation agreement. Because Dickerson could not remember whether he had signed a probation agreement,

which would lead to the conclusion he did not remember the terms of the agreement, the evidence shows he was not coerced into consenting to Naeve's entry into the apartment based on the terms of the agreement. We reject McIntire's claim Dickerson's consent was not voluntary due to the terms of his probation agreement.

We turn to a consideration of other factors to determine whether Dickerson's consent was voluntary, which may include the following:

> (1) the individual's age and mental ability; (2) whether the individual was intoxicated or under the influence of drugs; (3) whether the individual was informed of [the individual's] *Miranda* rights; and (4) whether the individual was aware, through prior experience, of the protections that the legal system provides for suspected criminals. It is also important to consider the environment in which an individual's consent is obtained, including (1) the length of the detention; (2) whether the police used threats, physical intimidation, or punishment to extract consent; (3) whether police made promises or misrepresentations; (4) whether the individual was in custody or under arrest when consent was given; (5) whether consent was given in a public or in a secluded location; and (6) whether the individual stood by silently or objected to the search.

*Lowe*, 812 N.W.2d at 572-73 (quoting *United States v. Golinveaux*, 611 F.3d 956, 959 (8th Cir. 2010)).

At the time of the suppression hearing, held on November 21, 2016, Dickerson was fifty-three years old. He testified he had lived in the apartment in Ogden by himself and was then on probation. Dickerson stated Naeve knocked on the door and Dickerson opened the door. No evidence was presented as to Dickerson's mental ability or whether he was under the influence of drugs or alcohol at the time he answered the door. Because Dickerson was on probation in Boone County, we can infer he had previous experience with the Iowa criminal justice system. Dickson was not detained, no threat or intimidation was used,

nor any promise or misrepresentation given. Dickerson was in his own apartment, not in a secluded location. He did not object to having Naeve enter his apartment. We conclude the State has established, by a preponderance of the evidence, Dickerson's consent was voluntary.

"Permission to search may be given by a third party who possesses common authority over or other sufficient relationship to the premises." *State v. Bakker*, 262 N.W.2d 538, 546 (Iowa 1978); *see also State v. Carter*, 537 N.W.2d 804, 805 (Iowa Ct. App. 1995) ("Generally, a person who has some common authority over an item or control over the premises where the object sought to be seized is located may consent to a seizure of the object."). "From such relationship, it is reasonable to recognize that any of the co-inhabitants has the right to permit a search in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched." *State v. Knutson*, 234 N.W.2d 105, 107 (Iowa 1975) (noting a casual houseguest had not established an exclusive right to one area of an apartment and the tenant could consent to a search of the apartment).

McIntire was a casual houseguest in Dickerson's apartment. As the tenant for the apartment, Dickerson could consent to Naeve's entry into the apartment without violating McIntire's rights. *See id.* Once Naeve entered the apartment, the baggies of methamphetamine in McIntire's possession were in plain view and could properly be seized. *See State v. Oliver*, 341 N.W.2d 744, 746 (Iowa 1983) (noting evidence may be seized under the plain view doctrine when the intrusion into the area is justified, the discovery of the object is inadvertent, and the incriminating nature of the object is immediately apparent).

We conclude the district court properly denied McIntire's motion to suppress. We affirm his conviction for possession of a controlled substance (methamphetamine) with intent to deliver.

**AFFIRMED.**